1   IGNACIA S. MORENO
    Assistant Attorney General
2   Environment and Natural Resources Division

3   Jason A. Hill, D.C. Bar No. 477543
    Trial Attorney
4   U.S. Department of Justice
    Environment and Natural Resources Division
5   Natural Resources Section
    P.O. Box 663
6   Washington, DC 20044-0663
    Phone: (202) 514-1024
7   Fax:  (202) 305-0506
    jason.hill2@usdoj.gov
8
    Thomas K. Snodgrass, Colorado Bar. No. 31329
9   Trial Attorney
    1961 Stout Street, 8th Floor
10  Denver, CO 80294
    Phone:  303/844-1368
11  Fax: 303/844-1350
    thomas.snodgrass@usdoj.gov
12
    Attorneys for Defendants

13

14

15                     IN THE UNITED STATES DISTRICT COURT

16            FOR THE EASTERN DISTRICT OF CALIFORNIA

17

18

19   PUBLIC LANDS FOR THE PEOPLE,          Civ. No. 2:09-cv-1750-LKK-JFM
     INC., et al.,
20                                         Related Cases:
                         Plaintiffs,       Civ. No. 2:09-cv-2523-LKK-JFM
21                                         Civ. No. 2:02-325-LKK-JFM
              v.
22                                         **DEFENDANTS' REPLY**
     UNITED STATES DEPARTMENT OF           **MEMORANDUM IN SUPPORT OF**
23   AGRICULTURE, et al.,                  **MOTION FOR PARTIAL**
                                           **DISMISSAL OF PLAINTIFFS'**
24                       Defendants.       **COMPLAINT**

25                                         Date: February 22, 2009
                                           Time: 10:00 a.m.
26                                         Judge: Honorable Lawrence K. Karlton
                                           Place: Courtroom 4
27

28

1

**TABLE OF CONTENTS**

2  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3  ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4  I.  The Court Should Dismiss Claims II Through XIV, XVI Though XVIII,
    And XX For Lack Of Subject Matter Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5

6   A.  Plaintiffs Lack Standing To Assert Claims II Through IX,
        XI Through XIII, XVI Through XVIII, And XX Because
        These Claims Are Predicated Upon Vague And Conclusory

7       Assertions Of Injury To Unspecified And Unproven Mining
        Claims And Rights-of-Way . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

8

9   B.  Claims II, VI Through IX, XI Through XIII, XVI Through
        XVIII, And XX Are Unripe Because Plaintiffs Have Not
        Submitted A Notice Of Intent Or Plan Of Operations

10      Proposing Motor Vehicle Use On Non-Designated Roads . . . . . . . . . . . . . . . . . 5

11      1.  Forest Service regulations require submission of
            a notice of intent or plan of operations for mining

12          activities that would utilize purported roads and
            trails that are not designated as open to motor vehicle

13          use under the Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

14      2.  Plaintiffs' proposed access does not qualify for an
            exemption under the Forest Service regulations . . . . . . . . . . . . . . . . . . 7

15

16      3.  Plaintiffs do not hold unimpeded rights of access that
            would render the Forest Service regulations inapplicable
            to them . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

17

18      4.  The alleged burden of complying with the Forest Service's
            regulatory requirements does not exempt Plaintiffs from
            such compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

19

20  C.  The Court Lacks Subject Matter Jurisdiction Over Claims II,
        VI Through IX, XVI, And XVII Because Plaintiffs Have Failed
        To Demonstrate A Waiver Of The United States' Sovereign

21      Immunity Under These Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

22  D.  Claims III, V Through VII, XI, And XIV Are Non-Justiciable
        Because They Seek To Compel Implementation Of Broad

23      Statutory Directives Rather Than Discrete Agency Action That
        Is Legally Required . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

24

25  E.  The Court Lacks Subject Matter Jurisdiction Over Claim X
        Because The APA, Standing Alone, Does Not Provide An
        Independent Cause Of Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

26

27

28

F.   The Court Lacks Subject Matter Jurisdiction Over Claim XIV
        Because Plaintiffs Failed To Exhaust Administrative Remedies
        With Respect To Their Challenge Under The Regulatory Flexibility
        Act and Because Implementation Of FLPMA Section 1732(b) Is
        Committed To Agency Discretion By Law . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

G.   Plaintiffs Have Failed To Demonstrate A Waiver Of Sovereign
        Immunity Under Their Takings And Damages Claims
        (Claims XVIII and XX) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

II.   Plaintiffs' Additional Arguments Raised In Their Response Are
        Premised Upon A Misreading Of The Governing Statutes And
        Case Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

A.   Claim II Fails To State A Claim Because Neither The Transfer
        Act Nor The 1872 Mining Law Deprives The Forest Service
        Of Authority To Regulate Access To Mining Claims On
        NFS Lands . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

B.   Claim III Is Based Upon Plaintiffs' Misunderstanding of the
        System of Forest Management Created Under NFMA . . . . . . . . . . . . . . . . . . . 18

C.   Claim IV Fails to State a Claim Under Any Wilderness Statute
        Plaintiffs Cite . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

D.   Claim V Fails to State a Claim Because MUSYA Does Not
        Provide A Blanket Prohibition Against The Forest Service Taking
        Actions In The NFS That May Affect Mineral Resources . . . . . . . . . . . . . . . . . 21

E.   Claim VI Fails To State A Claim Because The Multiple Surface
        Use Act Does Not Preclude The Forest Service From Regulating
        Access To Mining Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

F.   Claim VII Fails To State A Claim Because FLPMA Does Not
        Limit The Forest Service's Regulatory Authority To Restrict Motor
        Vehicle Use Under The Decision To Designated Roads And Trails . . . . . . . . . 23

G.   Claim VIII Fails To State A Claim Because It Seeks To Impose
        A Non-Existent Duty Upon The Forest Service To Identify And
        Determine The Validity Of Each And Every Potential R.S. 2477
        Right-Of-Way In The ENF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

H.   Claim IX Under The Omnibus Act Fails To State A Claim
        Because The Decision Does Not Concern The Substantive
        Standards Or Procedures To Be Used In Determining The
        Validity Of R.S. 2477 Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

I.   Claim X Fails To State A Claim Because The
        APA Does Not Impose Any Substantive Legal Requirements . . . . . . . . . . . . . 26

J.   Claim XI Fails To State A Claim Because The Mining and
        Minerals Policy Act of 1970 Imposes No Requirements Upon
        The Secretary Of Agriculture . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

K.      Claim XII Fails To State A Claim Because The Forest Service
        Has Well-Established Authority to Regulate Access To Mining
        Claims ................................................. 27

L.      Claim XIII Fails To State A Claim Because The Americans
        With Disabilities Act Does Not Apply To Federal Agencies
        And Because The Decision Does Not Deny Mining Claim Access
        To Plaintiffs ........................................... 27

M.      Claim XIV Fails To State A Claim Because Neither The
        Regulatory Flexibility Act Nor Section 1732(b) Of FLPMA
        Applies To The Decision ................................. 29

N.      Claim XV Should Be Dismissed Because Plaintiffs Have
        Abandoned This Challenge ............................... 31

O.      Claim XVI Fails To State A Claim Because An Easement
        By Necessity Is Not Available Over NFS Lands And Because
        Plaintiffs Fail To Allege The Elements Of Such An Easement
        For Any Specific Mining Claims ......................... 31

P.      Claim XVII Fails To State A Claim Because Plaintiffs Do
        Not Hold Unimpeded Rights Of Access To The ENF For
        Mining And Prospecting Purposes ....................... 32

Q.      Claims XVIII And XX Fail To State A Claim Because
        Plaintiffs Have Failed To Identify Any Alleged Mining
        Claims, Roads, Or Rights-Of-Way That Are The Subject
        Of These Claims And Because They Have No Legal Interest
        In Any Public Roads Or Rights-Of-Way That Are Not Designated
        Under The Decision ..................................... 32

CONCLUSION .......................................................... 33

1

**TABLE OF AUTHORITIES**

2

**CASES**

3    Adams v. United States, 3 F.3d 1254 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

4    Alexander v. Sandoval, 532 U.S. 275 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

5    Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 33

6    Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 33

7    Camp v. Pitts, 411 U.S. 138 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 21

8    Clouser v. Espy, 42 F.3d 1522 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

9    Colo. Envtl. Coal. v. Dombeck, 185 F.3d 1162 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . 18

10   Ctr. for Biological Diversity v. Veneman, 394 F.3d 1108 (9th Cir. 2005) . . . . . . . . . . . . . 13-14

11   Eagle-Picher Indus., Inc. v. United States, 901 F.2d 1530 (10th Cir. 1990) . . . . . . . . . . . . . . 15

12   F.T.C. v. Standard Oil Co. of Calif., 449 U.S. 232 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

13   Fitzgerald Living Trust v. United States, 460 F.3d 1295 (9th Cir. 2006) . . . . . . . . . . . . . . 31, 32

14   Friends of Panamint Valley v. Kempthorne, 499 F. Supp. 2d 1165
15   (E.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

     Grand Canyon Trust v. U.S. Bureau of Reclamation, 623 F. Supp. 2d 1015
16   (D. Ariz. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

17   Hazel Green Ranch, LLC v. U.S. Dep't of Interior, No. 07cv414, 2008 WL 4755325,
18   (E.D. Cal. Oct. 28, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

19   Heckler v. Chaney, 470 U.S. 821 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

20   Holden v. United States, 38 Fed. Cl. 732 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

     Howell v. U.S. Army Corps of Engineers, 794 F. Supp. 1072 (D.N.M. 1992) . . . . . . . . . . . . 10
21

22   Kane County v. Salazar, 562 F.3d 1077 (10th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

23   Kinscherff v. United States, 586 F.2d 159 (10th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

24   Kootenai Tribe of Idaho v. Veneman, 313 F.3d 1094 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . 19

25   LaFargue v. United States, 4 F. Supp. 2d 580, 587 (E.D. La. 1998) . . . . . . . . . . . . . . . . . . . . 17

     Lands Council v. McNair, 537 F.3d 981, 993 (9th Cir.2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 21
26

27   Leveris v. England, 249 F. Supp. 2d 1, 4 (D. Me. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

28   Long v. Area Manager, Bureau of Reclamation, 236 F.3d 910, 915 (8th Cir. 2001) . . . . . . . . 12

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Maritrans, Inc. v. United States, 342 F.3d 1344 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . 4

Marsh v. Or. Natural Res. Council, 490 U.S. 360 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Metro. Water Dist. of S. Cal. v. United States, 830 F.2d 139 (9th Cir. 1987) . . . . . . . . . . . . . . 12

Mobil Exploration & Producing U.S., Inc. v. U.S. Dep't of Interior, 180 F.3d 1192
(10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Montanans for Multiple Use v. Barbouletos, 568 F.3d 225 (D.C. Cir. 2009) . . . . . . . . . . . . . . 10

Native Ecosystems Council v. Dombeck, 304 F.3d 886 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . 16

Norton v. S. Utah Wilderness Alliance, 542 U.S. 55 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . 18

ONRC Action v. Bureau of Land Mgmt., 150 F.3d 1132 (9th 1998) . . . . . . . . . . . . . . . . . . . . . 19

Oregon Natural Res. Council v. Thomas, 92 F.3d 792 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . 15

Park Lake Res. Ltd. Liability Co. v. U.S. Dep't of Agric., 197 F.3d 448
(10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Pennzoil Co. v. F.E.R.C., 742 F.2d 242 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Perkins v. Bergland, 608 F.2d 803 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Prairie Wood Products v. Glickman, 971 F. Supp. 457 (D. Or. 1997) . . . . . . . . . . . . . . . . . . . 15

Preferred Risk Mut. Ins. Co. v. United States, 86 F.3d 789 (8th Cir. 1996) . . . . . . . . . . . . . . . 15

S. Utah Wilderness Alliance v. Bureau of Land Mgmt., 425 F.3d 735 (10th Cir. 2005) . . . 25, 26

Save Our Springs v. Babbitt, 27 F. Supp. 2d 739 (W.D. Tex. 1997) . . . . . . . . . . . . . . . . . . . . . 15

Shawnee Trail Cons'y v. U.S. Dep't of Agric., 222 F.3d 383 (7th Cir. 2000) . . . . . . . . . . . 11, 12

Sierra Club v. Martin, 110 F.3d 1551 (11th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Smith v. Orr, 855 F.2d 1544 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

S.W. Four Wheel Drive Ass'n v. Bureau of Land Mgmt., 363 F.3d 1069
(10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Summers v. Earth Island Institute, 129 S. Ct. 1142 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Thornhill Publ'g Co. v. GTE, 594 F.2d 730 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Ukiah Valley Medical Center v. F.T.C., 911 F.2d 261(9th Cir. 1990) . . . . . . . . . . . . . . . . . . . 10

United States v. Curtis-Nevada Mines, Inc., 611 F.2d 1277 (9th Cir. 1980) . . . . . . . . . . . . . . 22

United States v. Doremus, 888 F.2d 630 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 22

United States v. Garfield County, 122 F. Supp. 2d 1201(D. Utah. 2000) . . . . . . . . . . . . . . . . 26

United States v. Jenks, 129 F.3d 1348 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32

United States v. Jenks, 22 F.3d 1513 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

United States v. Lex, 300 F. Supp. 2d 951(E.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Petty Motor Co., 327 U.S. 372 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Va. Elec. & Power, 365 U.S. 624 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Vogler, 859 F.2d 638 (9th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Weiss, 642 F.2d 296 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 18, 27

## STATUTES

5 U.S.C. § 603 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30

5 U.S.C. § 701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

5 U.S.C. § 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 14

5 U.S.C. § 704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

5 U.S.C. § 706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

16 U.S.C. § 472 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

16 U.S.C. § 478 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

16 U.S.C. §§ 528-531 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

16 U.S.C. § 528 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

16 U.S.C. § 535 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

16 U.S.C. § 551 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 23

16 U.S.C §§ 1131-1136 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

16 U.S.C. § 1604 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 29

16 U.S.C. § 1608 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

16 U.S.C. § 1609 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

28 U.S.C. § 2401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

28 U.S.C. § 2409a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

29 U.S.C. § 794 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

1  30 U.S.C. §§ 21-54 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 27

2  30 U.S.C. § 21a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

3  30 U.S.C. § 22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

4  30 U.S.C. § 612 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

5  30 U.S.C. § 615 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

6  42 U.S.C. § 12132 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

7  43 U.S.C. § 1702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 30

8  43 U.S.C. § 1732 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 30

9  43 U.S.C. § 1761 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

10  43 U.S.C. § 1766 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

11  43 U.S.C. § 1768 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

12  43 U.S.C. § 1769 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

13  43 U.S.C. § 1770 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

14  43 U.S.C. § 1771 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

15  Cal. Pub. Res. Code § 5093.31 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

16  Cal. Pub. Res. Code § 5093.33 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

17  Cal. Pub. Res. Code § 5093.35 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

18

19                                              **RULES**
    Fed. R. Civ. P. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 32

20  Fed  R. Civ. P. 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21

22                                           **REGULATIONS**
    7 C.F.R. § 15e.101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

23  36 C.F.R. § 200.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

24  36 C.F.R. § 212.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

25  36 C.F.R. § 212.51 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

26  36 C.F.R. § 212.52 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

27  36 C.F.R. § 228.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

28  36 C.F.R. § 228.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, 8, 9

1

36 C.F.R. § 228.12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

2

36 C.F.R. § 251.51 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

3

36 C.F.R. § 261.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

4

36 C.F.R. § 261.13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

5

70 Fed. Reg. 32,713 (June 6, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

6

70 Fed. Reg. 68,264 (Nov. 9, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 29

7

73 Fed. Reg. 65,984 (Nov. 6, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

8

73 Fed. Reg. 74,689 (Dec. 9, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

9

10

**OTHER AUTHORITY**

Exec. Order No. 11,644, 37 Fed. Reg. 2877 (Feb. 8, 1972)  . . . . . . . . . . . . . . . . . . . . . . . . . 20

11

12

Exec. Order No. 11,989, 42 Fed. Reg. 26,959 (May 24, 1977) . . . . . . . . . . . . . . . . . . . . . . . 20

Wright & Miller, 14A Fed. Prac. & Proc. Juris. 3d § 3659 . . . . . . . . . . . . . . . . . . . . . . . . . . 15

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INTRODUCTION**

2    In their Complaint, Plaintiffs bring a litany of challenges against the Forest Service's decision

3    (the "Decision") designating National Forest System ("NFS") roads and trails for public motor

4    vehicle use in the Eldorado National Forest ("ENF").  Plaintiffs variously fault the Forest Service

5    – in issuing its Record of Decision ("ROD") and Final Environmental Impact Statement ("FEIS")

6    – for purportedly interfering with their alleged rights of unimpeded access to the ENF for mining and

7    prospecting purposes; for failing to undertake a site-specific analysis of the Decision's impacts on

8    mining or, alternatively, for failing to undertake a comprehensive analysis of such impacts

9    throughout National Forests across the West; for seeking to require miners and prospectors to

10   comply with the Forest Service's regulatory requirements governing access to mining claims; and

11   for other such alleged improprieties.  Due to the many fatal jurisdictional and legal deficiencies in

12   these challenges, Defendants moved for dismissal of Claims II through XVIII and XX pursuant to

13   Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Defendants separately moved for a more

14   definite statement of Claim I pled under the National Environmental Policy Act ("NEPA").

15   Plaintiffs' response to Defendants' motion to dismiss is predicated upon conclusory

16   assertions and legally erroneous conclusions that do nothing to rebut the basis for Defendants'

17   motion.  Accordingly, Claims II through XVIII and XX should be dismissed for the same

18   jurisdictional and legal deficiencies discussed in Defendants' opening memorandum ("U.S.

19   Memo.").  First, Plaintiffs' vague and conclusory assertions of injury to unspecified mining claims

20   and alleged rights-of-way are insufficient to establish a concrete injury-in-fact giving rise to standing.

21   Plaintiffs cannot establish such injury based upon alleged interference with a free-floating right of

22   access for mining throughout the ENF.  Second, many of Plaintiffs' claims are unripe because

23   Plaintiffs have not sought to comply with the Forest Service's regulatory process governing mining

24   claim access, and the Forest Service has not denied or unduly restricted access to any particular

25   mining claims.  Third, the Court lacks jurisdiction over many of Plaintiffs' claims because these

26   claims are predicated upon a threshold adjudication of title that exceeds the scope of the waiver of

27   sovereign immunity provided under the Administrative Procedure Act ("APA").  Fourth, many of

28   Plaintiffs' claims are not judicially cognizable because they seek to compel implementation of broad

statutory directives rather than discrete agency action that is legally required.  Fifth, the Court lacks subject matter jurisdiction over Claim X pled under the APA because the APA, standing alone, does not provide an independent cause of action.   Sixth, Plaintiffs failed to exhaust administrative remedies with respect to Claim XIV under the Regulatory Flexibility Act.  Seventh, the Court lacks subject matter jurisdiction over Plaintiffs' takings and damages claims (Claims XVIII and XX) because Plaintiffs have failed to waive the right to seek compensation in excess of $10,000, as they must in order to satisfy the limited waiver of sovereign immunity under the Little Tucker Act. Finally, Claims II through XVIII and XX fail to state a claim because they mischaracterize the effect of the Decision, they are premised upon alleged rights of unimpeded mining access that are wholly unfounded, and they otherwise conflict with the statutes and case law upon which they are premised.

## **ANALYSIS**

**I.**    **The Court Should Dismiss Claims II Through XIV, XVI Through XVIII, And XX For Lack Of Subject Matter Jurisdiction.**

  **A.**    **Plaintiffs Lack Standing To Assert Claims II Through IX, XI Through XIII, XVI Through XVIII, And XX Because These Claims Are Predicated Upon Vague And Conclusory Assertions Of Injury To Unspecified And Unproven Mining Claims And Rights-of-Way.**

In their opening memorandum, Defendants established that Plaintiffs lack standing to assert Claims II through IX, XI through XIII, XVI through XVIII, and XX because these claims are predicated upon vague and conclusory assertions of injury to unspecified mining claims and rights-of-way.  Specifically, Defendants moved for dismissal because Plaintiffs fail to identify: (1) any mining claims that are the subject of these challenges; (2) any roads and/or putative rights-of-way previously used by Plaintiffs for mining access that are not designated as open to motor vehicle use under the Decision; (3) any duly adjudicated rights-of-way that are not recognized by the Decision; or (4) any concrete, future plans to utilize these roads or alleged rights-of-way that are precluded by virtue of the Decision.  Accordingly, Plaintiffs lack standing because they fail to demonstrate – as required – a concrete injury-in-fact that is actual and imminent.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); Summers v. Earth Island Institute, 129 S. Ct. 1142, 1149 (2009).

Plaintiffs respond by asserting that the allegations of the Complaint – specifically, the allegations at paragraphs 40 through 47 – are sufficient to establish standing.  See, e.g., Pl. Memo.

at 13.  This argument is unavailing.  The referenced paragraphs of the Complaint simply allege that

Plaintiffs purportedly own unspecified mining claims and that they have been injured through the

alleged closure of unidentified roads and rights-of-way.  Nowhere in these paragraphs do Plaintiffs

identify the specific mining claims, roads, or rights-of-way that are the subject of their challenges,

any future mining plans that are precluded by the Decision, or any specific injury that will result.

Accordingly, Plaintiffs' vague and conclusory assertions of injury fall far short of satisfying the

requirements of <u>Lujan</u> and <u>Summers</u>.  <u>See Lujan</u>, 504 U.S. at 564-66 (requiring prior use of specific

lands affected by challenged activity and concrete, future plans to use the lands "and not an area

roughly 'in the vicinity' of [them]." ) (quoting <u>Lujan v. National Wildlife Fed'n</u>, 497 U.S. 871, 887-

89 (1990)); <u>Summers</u>, 129 S. Ct. at 1150 (allegation of past injury is insufficient to establish standing

"because it was not tied to application of the challenged regulations, because <u>it does not identify any</u>

<u>particular site</u>, and because it relates to past injury rather than imminent future injury that is sought

to be enjoined.") (emphasis added).

        Plaintiffs also incorrectly assert that the factual basis for their alleged standing will be

identified through discovery.  <u>See</u>, <u>e.g.</u>, Pl. Memo. at 16 ("Defendants complain that the Plaintiffs

did not identify any particular closed road in the ENF that caused them harm.  That of course is a

subject for discovery.").  Where – as here – Plaintiffs' standing in fact is challenged, Plaintiffs bear

the burden of demonstrating facts sufficient to establish their standing.  <u>See</u> <u>Thornhill Publ'g Co. v.</u>

<u>GTE</u>, 594 F.2d 730, 733 (9th Cir. 1979).  There is no basis for further proceedings if the Court lacks

jurisdiction over the claims.  <u>See</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1950 (2009) ("Rule 8 marks a

notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but

it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

        In addition, with the exception of Plaintiffs' constitutional takings and damages claims under

Claims XVIII and XX, the Court's review of this action is to be undertaken pursuant to the APA.[1]

_____

[1]/Although Plaintiffs contend that they seek damages "where available, well beyond Count XVIII,"
Pl. Memo. at 40, they fail to identify any waiver of sovereign immunity that would allow them to
seek compensation under any other claims.  In this regard, the APA's waiver of sovereign immunity
applies only when Plaintiffs are seeking relief "other than money damages."  5 U.S.C. § 702.
Moreover, Plaintiffs may not even seek "damages" under their takings claim because it is well settled

1    As explained by the Ninth Circuit Court of Appeals:

2            [P]laintiffs' other arguments against the challenged actions–that they were taken
             without statutory authority, or that they violate statutory standards–should also be
3            regarded and treated as claims under the APA. This is because the APA is a
             framework statute that provides the generally applicable means for obtaining judicial
4            review of actions taken by federal agencies. Generally, except where a party
             challenges an agency action as violating a federal law–be it a statute, regulation, or
5            constitutional provision–that has been interpreted as conferring a private right of
             action, or where a particular regulatory scheme contains a specialized provision for
6            obtaining judicial review of agency actions under the scheme, review under a
             framework statute such as the APA is the sole means for testing the legality of federal
7            agency action. *See Lujan v. National Wildlife Federation,* 497 U.S. 871, 110 S.Ct.
             3177, 111 L.Ed.2d 695 (1990); *Sierra Club v. Penfold,* 857 F.2d 1307, 1315 (9th
8            Cir.1988).

9    Clouser v. Espy, 42 F.3d 1522, 1528 n.5 (9th Cir. 1994).  Under the APA, the Court's review is

10   generally to be based upon an administrative record compiled by the agency under the arbitrary and

11   capricious standard rather than pursuant to discovery and trial procedures.  See Camp v. Pitts, 411

12   U.S. 138, 142 (1973) (in APA case, "the focal point for judicial review should be the administrative

13   record already in existence, not some new record made initially in the reviewing court.").  Plaintiffs

14   therefore cannot rely upon discovery to cure the defects in their standing for these claims.

15           Finally, with respect to Plaintiffs' takings and damages claims, there is no basis for

16   considering these claims unless and until Plaintiffs have carried their burden of identifying a

17   particular mining claim, alleged easement, or other property interest that has purportedly been taken.

18   A generalized and abstract allegation of a taking – untethered to a specific property interest – simply

19   is not sufficient to create standing.[2]  See, e.g., Maritrans, Inc. v. United States, 342 F.3d 1344, 1351

20

21   that the United States' potential liability under such claims is limited to just compensation for any
     property interest that the court determines has been taken.  See United States v. Va. Elec. & Power
22   Co., 365 U.S. 624, 633 (1961) ("The guiding principle of just compensation is reimbursement to the
     owner for the property interest taken. . . . He must be made whole but is not entitled to more.")
23   (citing Olson v. United States, 292 U.S. 246, 255 (1934)); United States v. Petty Motor Co., 327 U.S.
     372, 377 (1946) ("[J]ust compensation is the value of the interest taken.").
24

25   [2]/These same defects also mandate dismissal of Plaintiffs' takings and damages claims for failure
     to state a claim.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); Ashcroft, 129 S.
26   Ct. at 1949 ("Threadbare recitals of the elements of a cause of action supported by mere conclusory
     statements, do not suffice.").  Plaintiffs simply do not satisfy the basic pleading requirements of Fed.
27   R. Civ. P. 8(a), given that they have failed to identify any property interests that have allegedly been
     taken.  Compare Court of Federal Claims Local Rule 9(i) ("In pleading a claim for just compensation
28   under the Fifth Amendment of the United States Constitution, a party must identify the specific
     property interest alleged to have been taken by the United States.") (emphasis added).

1   (Fed. Cir. 2003) (threshold element of takings claim is "whether the claimant has established a

2   'property interest' for purposes of the Fifth Amendment."). Accordingly, for all these reasons,

3   Plaintiffs lack standing to assert Claims II through IX, XI through XIII, XVI through XVIII, and XX.

4       **B.    Claims II, VI Through IX, XI Through XIII, XVI Through XVIII, And XX Are
               Unripe Because Plaintiffs Have Not Submitted A Notice Of Intent Or Plan Of
5             Operations Proposing Motor Vehicle Use On Non-Designated Roads.**

6       Defendants challenge the ripeness of Claims II, VI through IX, XI through XIII, XVI through

7   XVIII, and XX because Plaintiffs have failed to submit, as required under a separate administrative

8   process, a notice of intent or proposed plan of operations for any mining activities that necessitate

9   motor vehicle use on roads and trails that are not designated under the Decision. Plaintiffs respond

10  with numerous arguments that attempt to establish that they are somehow exempt from the Forest

11  Service's regulations governing access to mining claims. Each of these arguments is without merit.

12          **1.    Forest Service regulations require submission of a notice of intent or
                   plan of operations for mining activities that would utilize purported
13                 roads and trails that are not designated as open to motor vehicle use
                   under the Decision.**

14      Plaintiffs assert that the Forest Service regulations do not require the submission of either a

15  notice of intent or plan of operations for mining activities that would utilize purported roads and

16  trails that are not designated as open to motor vehicle use under the Decision. <u>See</u> Pl. Memo. at 9.

17  This argument misconstrues the governing requirements. The Forest Service regulations define

18  mining "operations" to include the use of "roads and other means of access." 36 C.F.R. § 228.3(a).

19  Absent an applicable exception under 36 C.F.R. § 228.4(a)(1), a notice of intent is required for

20  proposed mining operations – including the use of roads – if the operations "<u>might cause</u> significant

21  disturbance of surface resources." 36 C.F.R. § 228.4(a) (emphasis added). A more detailed proposed

22  plan of operations is required "if the proposed operations <u>will likely cause</u>" such a disturbance. 36

23  C.F.R. § 228.4(a)(3) (emphasis added).

24      If a notice of intent is submitted, "[t]he District Ranger will, within 15 days of [its] receipt

25  . . . , notify the operator if a proposed plan of operations is required before the operations may

26  begin." 36 C.F.R. § 228.4(a)(2). If a plan of operations is submitted, the Forest Service must

27  affirmatively approve the plan before operations may commence. <u>See</u> 36 C.F.R. § 228.12 ("An

28

1    operator is entitled to access in connection with operations, but no road, trail, bridge, . . . shall be

2    constructed or improved, nor shall any other means of access, including but not limited to off-road

3    vehicles, be used until the operator has received approval of an operating plan in writing from the

4    authorized officer when required by § 228.4(a).").   Regardless of whether a notice of intent or

5    proposed plan of operations is submitted,[3] the submission must include a description of the proposed

6    access route, whether over existing or proposed roads.  See 36 C.F.R. § 228.4(a) ("Each notice of

7    intent to operate shall provide information sufficient to identify . . . the route of access to the area

8    of operations, and the method of transport.") (emphasis added); 36 C.F.R. § 228.4(c)(2)-(3)

9    (proposed plan of operations shall include a map or sketch sufficient to locate "existing and/or

10   proposed roads or access routes to be used in connection with the operations as set forth in section

11   228.12" and information sufficient to describe or identify "the type and standard of existing and

12   proposed roads or access routes.") (emphasis added).

13          Under this regulatory scheme, a notice of intent or plan of operations is required for proposed

14   mining operations that would utilize roads that are not designated as open to motor vehicle use.  As

15   discussed, the regulations define mining "operations" to include the use of "roads and other means

16   of access."  36 C.F.R. § 228.3(a).  The regulations also specifically require a description of the

17   proposed access route – whether along existing or proposed roads – in connection with a notice of

18   intent or proposed plan of operations.  Finally, the use of non-designated roads for mining purposes

19   "might cause significant disturbance of surface resources" because these routes would otherwise

20   remain undisturbed – and not available for motor vehicle use – under the Decision.  36 C.F.R. §

21   228.4(a).  Thus, the use of proposed access roads for mining operations is included within the scope

22   of proposed mining operations requiring submission of a notice of intent or plan of operations.[4]

23

24   [3]/Under regulations implementing the 2005 Travel Management Rule, even if no plan of operations
     is required, motor vehicle use on non-designated routes still requires some form of written
25   authorization.  36 C.F.R. § 212.51(a)(8) (allowing motor vehicle use on non-designated routes "that
     is specifically authorized under a written authorization issued under Federal law or regulations.").
26
     [4]/Following the submission of a plan of operations, the regulations require the Forest Service to
27   undertake a site-specific analysis of the environmental impacts of the proposed operations.  See 36
     C.F.R. § 228.4(f) ("Upon completion of an environmental analysis in connection with each proposed
28   operating plan, the authorized officer will determine whether an environmental statement is

2.     **Plaintiffs' proposed access does not qualify for an exemption under the Forest Service regulations.**

Notwithstanding the foregoing regulatory scheme, Plaintiffs argue that they are not required to submit a notice of intent or plan of operations for their proposed mining access by virtue of the exemption under 36 C.F.R. § 228.4(a)(1)(i) for (1) "existing public roads" or (2) "roads used and maintained for [N]ational Forest System purposes." Pl. Memo. at 9. Plaintiffs are mistaken in this assertion. Under the 2005 Travel Management Rule, "existing public roads" are only exempted from the effect of travel management designations if the roads are "authorized by a legally-documented right-of-way held by a State, county, or other local public road authority." 70 Fed. Reg. 68,264, 68,278 (Nov. 9, 2005); see also 36 C.F.R. § 251.51 (excluding "legally documented rights-of-way held by State, county, or other local public road authority" from the definition of "National Forest System road"); 36 C.F.R. § 261.13 (exempting "[u]se of a road or trail that is authorized by a legally documented right-of-way held by a State, county, or other local public road authority" from effect of travel management designations). Because Plaintiffs have not identified any legally-documented rights-of-way for any roads that they propose to use, they fail to demonstrate the applicability of the "existing public roads" exemption.

Likewise, Plaintiffs are not eligible for the exemption for "roads used and maintained for National Forest System purposes." 36 C.F.R. § 228.4(a)(1)(i). After all, roads that are not designated for motor vehicle use under the Decision, by definition, do not qualify as "roads used and maintained for National Forest System purposes." Accordingly, Plaintiffs are not exempt under 36 C.F.R. § 228.4(a)(1)(i) from submitting a notice of intent or plan of operations for proposed mining operations that would utilize roads that are not designated under the Decision.

3.     **Plaintiffs do not hold unimpeded rights of access that would render the Forest Service regulations inapplicable to them.**

Plaintiffs also fail in their efforts to establish that they hold unimpeded rights of access to alleged but unidentified mining claims that would render the Forest Service's regulatory requirements inapplicable to them. See, e.g., Pl. Memo. at 21 ("No Plan of Operations is required

required."). Plaintiffs cannot bypass this site-specific review process.

to exercise a right of access granted by the Federal mining laws.").[5]   The Forest Service has unquestionable authority to regulate surface uses associated with proposed mining operations.  See, e.g., 16 U.S.C. § 551; Clouser, 42 F.3d at 1529-30; id. at 1530 n.9, discussing United States v. Fuller, No. CIV-S-83-850-LKK (E.D. Cal. Aug. 28, 1987) (J. Karlton) (recognizing Forest Service's regulatory authority over surface disturbing mining activities); United States v. Doremus, 888 F.2d 630, 632-633 (9th Cir. 1989); United States v. Weiss, 642 F.2d 296, 298-99 (9th Cir. 1981).[6]  This authority allows the agency to regulate access to mining claims, even where such access is proposed over existing roads, easements, and/or rights-of-way.  See Clouser, 42 F.3d at 1538; Adams v. United States, 3 F.3d 1254, 1258 n.1 (9th Cir. 1993); United States v. Vogler, 859 F.2d 638, 642 (9th Cir.1988); United States v. Jenks, 22 F.3d 1513, 1518 (10th Cir. 1994).  This authority also allows the agency to impose reasonable access restrictions that may affect the commercial viability or validity of a particular mining claim.  See Clouser, 42 F.3d at 1528-29. In appropriate circumstances, this authority even allows the agency to limit access to non-motorized means.  See id. at 1536-37, 1540.  Accordingly, Plaintiffs' claimed entitlement to an unimpeded right of mining access is legally erroneous and does not exempt Plaintiffs from the Forest Service's regulatory requirements.[7]

> **4.**      **The alleged burden of complying with the Forest Service's regulatory requirements does not exempt Plaintiffs from such compliance.**

Finally, Plaintiffs incorrectly argue that the alleged bias of the Forest Service against small and medium mining operations and the purported burden of complying with the agency's regulations

---

[5]/As discussed throughout Defendants' opening memorandum, Plaintiffs' erroneous assertions of entitlement to an unimpeded right of access to the ENF also mandates dismissal of many of Plaintiffs' claims for failure to state a claim.

[6]/Plaintiffs' reliance on United States v. Lex, 300 F. Supp. 2d 951 (E.D. Cal. 2003) is misplaced. Lex involved a citation for residential occupancy under 36 C.F.R. §261.10(b), and the Court's decision was based upon its interpretation of 36 C.F.R. § 228.4(a).  In direct response to Lex, the Forest Service subsequently amended both 36 C.F.R. § 228.4 and 36 C.F.R. § 261.10(b) to affirm its regulatory authority over the types of surface disturbing activities at issue in that case.  See 70 Fed. Reg. 32,713, 32,714-15 (June 6, 2005); 73 Fed. Reg. 65,984, 65,986 (Nov. 6, 2008).

[7]/This claimed entitlement also conflicts with the 2005 Travel Management Rule, which "requires designation of those roads, trails, and areas that are open to motor vehicle use . . . and prohibit[s] the use of motor vehicles off the designated system . . . ." 70 Fed. Reg. at 68,264.  Because Plaintiffs do not challenge the rule in this action, the propriety of these requirements is not at issue.

1  exempt them from having to file a notice of intent or proposed plan of operations.  See, e.g., Pl.

2  Memo. at 13-14, 37.  These assertions are unsubstantiated and based upon speculation regarding how

3  the Forest Service is likely to respond if Plaintiffs were to submit such a notice or plan, as well as

4  the anticipated burdens of seeking to comply with these requirements.[8]  Such unsubstantiated fears

5  do not provide the basis for ripe challenges.  See, e.g., Park Lake Res. Ltd. Liability Co. v. U.S.

6  Dep't of Agric., 197 F.3d 448, 453-54 (10th Cir. 1999) (review prior to final action on plan of

7  operations would be premature and unduly speculative because it is unclear how challenged

8  designation will ultimately affect proposed mining operations).  Rather, the "purpose of the ripeness

9  doctrine is to 'protect the agencies from judicial interference until an administrative decision has

10  been formalized and its effects felt in a concrete way by the challenging parties.'"  Id. at 453

11  (citations omitted).  Accordingly, until "the Forest Service reviews [a] submitted plan and requests

12  or requires any restrictions upon [] mining activities," judicial review of Plaintiffs' challenges is not

13  ripe since "later review [is] possible and the effect of the regulation on the plaintiffs [is] purely

14  speculative."[9] Id. at 453-54 (characterizing holding of Toilet Goods Ass'n v. Gardner, 387 U.S. 158,

15  163-65 (1967)); see also Park Lake, 197 F.3d at 454 ("Review now could result in piecemeal

16  challenges, and further agency action could render this challenge moot.").

17       In any event, the alleged burden of complying with an agency's regulatory requirements –

18  such as the Forest Service's notice of intent or plan of operations requirements – is not sufficient to

19  establish justiciable challenges.  See F.T.C. v. Standard Oil Co. of Calif., 449 U.S. 232, 244 (1980)

20  ("the expense and disruption of defending" oneself in "protracted adjudicatory proceedings" does

21

22

23  [8]/The Forest Service regulations contemplate that this burden will be relatively modest for small
    mining operations.  See 36 C.F.R. § 228.4(g) ("The public reporting burden for this collection of
24  information is estimated to vary from a few minutes for an activity involving little or no surface
    disturbance to several months for activities involving heavy capital investments and significant
25  surface disturbance, with an average of 2 hours per individual response.").

26  [9]/For similar reasons, Plaintiffs also fail to state a claim for relief under these challenges because,
    contrary to Plaintiffs' assertions, the Decision does not close or prohibit "motorized access [f]or
27  prospecting and developing of mining claims in the ENF."  Complaint at ¶155.  Rather, the Decision
    designates NFS roads and trails on which motor vehicle use by the general public is permitted, while
28  contemplating that additional private rights of access may be authorized for mining and prospecting
    purposes pursuant to a separate administrative process.  See U.S. Memo. at 25-26.

not constitute "irreparable harm" for purposes of establishing final agency action); Ukiah Valley Med. Ctr. v. F.T.C., 911 F.2d 261, 264 (9th Cir. 1990) (burden of having to defend oneself in administrative proceedings does not have sufficient impact to constitute final agency action); Mobil Exploration & Producing U.S., Inc. v. U.S. Dep't of Interior, 180 F.3d 1192, 1204 (10th Cir. 1999) (alleged burdens of having to comply with agency's record-keeping requirements are insufficient to establish ripe claims); Pennzoil Co. v. F.E.R.C., 742 F.2d 242, 245 (5th Cir. 1984) ("We do not believe that the burden of participating in the proceeding before the ALJ is sufficient to constitute the requisite irreparable harm to Pennzoil."); Howell v. U.S. Army Corps of Eng'rs, 794 F. Supp. 1072, 1075 (D.N.M. 1992) (burden of providing information to agency in connection with a permit application does not have direct and immediate impact sufficient to demonstrate ripe claims). Accordingly, under Park Lake and related cases,[10] until the Forest Service takes final agency action regulating Plaintiffs' mining access – such as by approving or disapproving a proposed plan of operations – any challenge to the restriction of such access is unripe.

## C. The Court Lacks Subject Matter Jurisdiction Over Claims II, VI Through IX, XVI, And XVII Because Plaintiffs Have Failed To Demonstrate A Waiver Of The United States' Sovereign Immunity Under These Claims.

In their opening memorandum, Defendants asserted that the Court lacks subject matter jurisdiction over Claims II, VI through IX, XVI, and XVII because these claims exceed the waiver of sovereign immunity provided under the APA. Specifically, Defendants argued that, where, as here, challenges to road closures by a federal land management agency are predicated upon the alleged existence of easements or other rights-of-way, the claims can be considered only in an action properly pled under the Quiet Title Act ("QTA"), 28 U.S.C. 2409a, not the APA. See Montanans for Multiple Use v. Barbouletos, 568 F.3d 225, 228-29 (D.C. Cir. 2009) (challenge to Forest Service's

---

[10] /Plaintiffs err in seeking to distinguish Park Lake on the grounds that it did not implicate access. See Pl. Memo. at 21 ("The issue in Park Lake did not involve roads or access to a mining claim."). The designation at issue in that case specifically "required road closures and barricades to prevent motorized access." Park Lake, 197 F.3d at 449. By way of relief, plaintiffs sought, among other things, "a permanent injunction enjoining the Forest Service from denying Park Lake motorized access to its mining claims or otherwise restricting Park Lake's mining activities." Id. at 450. Thus, Park Lake squarely implicated mining access, and the court's ripeness ruling is directly applicable to Plaintiffs' claims in the present action.

authority to close roads in National Forest must be brought under the QTA because it represents a challenge to United States' title to real property); Kane County v. Salazar, 562 F.3d 1077, 1088-89 (10th Cir. 2009) (claim that restrictions on off-highway vehicle use in national monument unduly infringed County's asserted rights-of-way must be brought under QTA); Shawnee Trail Conservancy v. U.S. Dep't of Agric., 222 F.3d 383, 386 (7th Cir. 2000) (APA claim challenging road closures by Forest Service must be dismissed for failure to proceed under QTA because action "represented a clear challenge to the United States' ownership of the land in question").

Plaintiffs respond by alleging that this authority is inapplicable because they are not challenging title, but instead are seeking to enforce rights of access that exist independently of principles of real property law. For instance, Plaintiffs assert in connection with their R.S. 2477 challenges raised under Claim VIII:

> The issue is closure of those existing roads by the Forest Service to miners and prospectors for access to their mining claims no matter who has title, the State, the County, the City, the public, or the Federal government. No matter who has title to the RS 2477 roads, the Federal government or anyone else, the primary issue remains the same. Plaintiffs allege that the Forest Service cannot close those existing roads to miners and prospectors, preventing them access to their mining claims, even if the Federal government has title to RS 2477 roads. . . . Since the Plaintiffs do not ask this Court to vest title to RS 2477 rights-of-way in them, there is no action to maintain under the Quiet Title Act. No action under the Quiet Title Act will resolve the propriety of the closure of the roads in the ENF by the Forest Service to miners and prospectors.

Pl. Memo. at 27 (emphasis added).

This argument falls far short of the mark. Contrary to Plaintiffs' position, issues concerning the right to use existing roads and rights-of-way for mining claim access are inextricably bound with questions of title. Indeed, Claims II, VI through IX, XVI, and XVII are conditioned upon the alleged existence of public rights-of-way, easements, and/or other common law rights of access that purportedly preclude the Forest Service from implementing alleged road closures under the Decision. These claims cannot be squared with Plaintiffs' contention that questions of title are somehow not implicated by their challenges. Easements and rights-of-way are real property interests. See Kinscherff v. United States, 586 F.2d 159, 161 (10th Cir. 1978) ("Easements are real property interests subject to quiet title actions."), cited in Hazel Green Ranch, LLC v. U.S. Dep't of Interior, No. 07cv414, 2008 WL 4755325, at *6 (E.D. Cal. Oct. 28, 2008). Even where a claimant holds

common law rights of access, these rights do not exempt the claimant from obtaining appropriate legal authorization for the exercise of that access. See, e.g., Jenks, 22 F.3d at 1517-18 (patent or common law easement rights did not exempt defendant from Forest Service's special use permit requirement); see also id. at 1518 ("A determination of Defendant's patent or common law claims to an easement was appropriate . . . because Defendant properly raised these claims in a quiet title action.") (emphasis added).  Accordingly,  Plaintiffs' claimed entitlement to a free-floating and unimpeded right of access – unmoored from principles of real property – is wholly unfounded.

Moreover, Plaintiffs cannot avoid the requirements of the QTA by seeking to characterize their claims as a challenge to the Forest Service's regulatory authority rather than a claim to title. See Shawnee Trail Cons'y, 222 F.3d at 388 ("To allow claimants to avoid the QTA by characterizing their complaint as a challenge to the federal government's regulatory authority would be to allow parties to seek a legal determination of disputed title without being subject to the limitations placed on such challenges."); Metro. Water Dist. of S. Cal. v. United States, 830 F.2d 139, 143-44 (9th Cir. 1987).  Regardless of whether Plaintiffs are seeking to quiet title in themselves, their claims are necessarily predicated upon a challenge to the United States' ownership of – and regulatory authority over – real property that can only be considered in an action properly pled under the QTA. See id. After all, consideration of these claims would require a threshold adjudication of whether there are any valid existing easements or rights-of-way in the ENF that are closed by the Decision; the Forest Service cannot be faulted for the treatment or non-treatment of unproven property interests that ultimately may not exist.  Accordingly, because consideration of Claims II, VI through IX, XVI, and XVII would exceed the scope of the waiver of sovereign immunity under the APA, these claims – brought under the APA rather than the QTA – must be dismissed for lack of jurisdiction.[11]

---

[11]/An additional jurisdictional defect in Claims VIII and IX, which are predicated upon the alleged existence of R.S. 2477 rights-of-way in the ENF, is that Plaintiffs lack standing to assert injury to such rights-of-way – even if they had pled claims under the QTA – because title to such rights-of-way is vested in governmental entities, not Plaintiffs. See S.W. Four Wheel Drive Ass'n v. Bureau of Land Mgmt., 363 F.3d 1069, 1071 (10th Cir. 2004); Kinscherff, 586 F.2d at 160; Long v. Area Manager, Bureau of Reclamation, 236 F.3d 910, 915 (8th Cir. 2001); Friends of Panamint Valley v. Kempthorne, 499 F. Supp. 2d 1165, 1177 (E.D. Cal. 2007); Hazel Green Ranch, 2008 WL 4755325, at *4.

**D.  Claims III, V Through VII, XI, And XIV Are Non-Justiciable Because They Seek To Compel Implementation Of Broad Statutory Directives Rather Than Discrete Agency Action That Is Legally Required.**

In their opening memorandum, Defendants asserted that Claims III, V through VII, XI, and XIV should be dismissed because these claims seek to compel implementation of broad programmatic directives rather than "*discrete* agency action that [the Forest Service] is *required* to take."[12] Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 64 (2004); see also Ctr. for Biological

_____

[12]/Specifically, Plaintiffs seek to compel implementation of the following broad directives:

- Claim III: Plaintiffs seek to enforce the discretionary authority of the Secretary under: (1) 16 U.S.C. § 1608(a) ("The Congress declares that the installation of a proper system of transportation to service the National Forest System, as is provided for in sections 532 to 538 of this title, shall be carried forward in time to meet anticipated needs on an economical and environmentally sound basis, and the method chosen for financing the construction and maintenance of the transportation system should be such as to enhance local, regional, and national benefits."); and (2) 16 U.S.C. § 535 (giving the Secretary discretion to "provide for the acquisition, construction, and maintenance of forest development roads within and near the national forests and other lands administered by the Forest Service in locations and according to specifications which will permit maximum economy in harvesting timber from such lands tributary to such roads and at the same time meet the requirements for protection, development, and management thereof, and for utilization of the other resources thereof."). Complaint at ¶126.
- Claim V: Plaintiffs seek to enforce: (1) the "harmonious and coordinated management" objectives of the Multiple Use Sustained Yield Act ("MUSYA"), Complaint at ¶145; (2) "the active management contemplated and mandated by MUSYA and NFMA [National Forest Management Act]," Complaint at ¶147; and (3) the broad mandate of MUSYA to give "due consideration . . . to the relative values of the various resources in particular areas." Complaint at ¶148, quoting 16 U.S.C. § 529.
- Claim VI: Plaintiffs seek to compel implementation of the unspecified "purpose" of the Multiple Surface Use Act, 30 U.S.C. §§ 612-615. Complaint at ¶155.
- Claim VII: Plaintiffs seek to compel implementation of the broad directive under the Federal Land Policy and Management Act ("FLPMA") that the "public lands be managed in a manner which recognizes the Nation's need for domestic sources of minerals and other resources." Complaint at ¶160.
- Claim XI: Plaintiffs seek to enforce the broad language of 30 U.S.C. § 21a ("The Congress declares that it is the continuing policy of the Federal Government in the national interest to foster and encourage private enterprise in (1) the development of economically sound and stable domestic mining, minerals, metal and mineral reclamation industries, (2) the orderly and economic development of domestic mineral resources, reserves, and reclamation of metals and minerals to help assure satisfaction of industrial, security and environmental needs, (3) mining, mineral, and metallurgical research, including the use and recycling of scrap to promote the wise and efficient use of our natural and reclaimable mineral resources, and (4) the study and development of methods for the disposal, control, and reclamation of mineral waste products, and the reclamation of mined land, so as to lessen any adverse impact of mineral extraction and processing upon the physical environment that may result from mining or mineral activities."). Complaint at ¶¶183-84.
- Claim XIV: Plaintiffs seek to enforce the unspecified "purpose" of the Regulatory Flexibility Act.  Complaint at ¶201.

1   Diversity v. Veneman, 394 F.3d 1108, 1113 (9th Cir. 2005) ("Because the Center fails to allege a

2   discrete agency action that the Forest Service failed to take, the Center has no standing under [APA]

3   § 706(1)"); Grand Canyon Trust v. U.S. Bureau of Reclamation, 623 F. Supp. 2d 1015, 1036-37 (D.

4   Ariz. 2009) ("[T]o the extent the Trust asks the Court to enforce the broad, programmatic directives

5   of the [Grand Canyon Protection Act], its asks the Court to undertake a task entrusted by Congress

6   to the Secretary of the Interior.").   As in Norton, although the statutes cited by Plaintiffs are

7   "mandatory as to the object to be achieved," they leave the Forest Service with "a great deal of

8   discretion in deciding how to achieve it."  Norton, 542 U.S. at 66.  The Court should therefore refuse

9   to compel implementation of the broad directives that Plaintiffs seek to enforce, as "[t]he prospect

10  of pervasive oversight by federal courts over the manner and pace of agency compliance with such

11  congressional directives is not contemplated by the APA."  Id. at 67.

12       Plaintiffs mischaracterize Defendants' position as being premised upon the mistaken

13  understanding that Plaintiffs challenge broad programmatic action rather than "discreet [sic] agency

14  action."  Pl. Memo. at 19.  Defendants acknowledge that the Decision represents discrete and final

15  agency action.   However, they seek dismissal because – regardless of whether the Decision

16  represents final agency action – Plaintiffs seek to compel implementation of broad statutory

17  mandates rather than discrete and legally required agency action.  See, e.g., Pl. Memo. at 30 ("the

18  Courts can compel compliance with national policy.").  As the Court ruled in Norton, such claims

19  are non-justiciable, whether pled as a challenge to final agency action or as a challenge to an

20  agency's alleged failure to act.  See Norton, 542 U.S. at 65.  Accordingly, the Court should dismiss

21  Plaintiffs' broad programmatic challenges under Claims III, V through VII, XI, and XIV.

22       **E.      The Court Lacks Subject Matter Jurisdiction Over Claim X Because The APA,
               Standing Alone, Does Not Provide An Independent Cause Of Action.**

23

24       The APA is a limited waiver of sovereign immunity that provides for judicial review of

     agency actions where a person has suffered a "legal wrong because of agency action, or [has been]

25
     adversely affected or aggrieved by agency action within the meaning of a relevant statute . . . ."  5

26
     U.S.C. § 702 (emphasis added).  To the extent that Plaintiffs attempt to assert a free-standing APA

27
     claim under Claim X, see Pl. Memo. at 28, it must be dismissed because the APA, standing alone,

28

does not provide an "independent basis of jurisdiction." <u>Eagle-Picher Indus., Inc. v. United States</u>, 901 F.2d 1530, 1532 (10th Cir. 1990); <u>see also</u> <u>Oregon Natural Res. Council v. Thomas</u>, 92 F.3d 792, 798, n.11 (9th Cir. 1996) ("As plaintiff's 'arbitrary and capricious' claims don't invoke any other statute, plaintiffs have no standing to raise them under section 702"). Absent a statute with substantive standards, judicial review is precluded because there is no "law to apply" and therefore "'no meaningful standard against which to judge the agency's exercise of discretion.'" <u>Thomas</u>, 92 F.3d at 798 (quoting <u>Lincoln v. Vigil</u>, 508 U.S. 182, 191 (1993)).[13]/

Plaintiffs misstate Defendants' argument as asserting that "there is no statute to which the APA will be applied in this case." Pl. Memo. at 29. Plaintiffs then argue that Defendants' motion to dismiss the APA claim fails because Defendants concede that, if Plaintiffs' NEPA claim will proceed at all, it must proceed under the APA. <u>See id.</u> Plaintiffs have failed to understand Defendants' argument. Defendants are not arguing that there is no statute to which the APA would apply in this case as the basis for judicial review. Rather, Defendants argue that, to the extent Plaintiffs assert a stand-alone claim under the APA, it must be dismissed. Plaintiffs fail to respond to this argument. Thus, because this Court lacks subject matter jurisdiction over a free-standing APA claim, Claim X must be dismissed.

**F.    The Court Lacks Subject Matter Jurisdiction Over Claim XIV Because Plaintiffs Failed To Exhaust Administrative Remedies With Respect To Their Challenge Under The Regulatory Flexibility Act and Because Implementation of FLPMA Section 1732(b) Is Committed To Agency Discretion By Law.**

In their opening memorandum, Defendants asserted that Claim XIV was precluded for failure to exhaust administrative remedies because Plaintiffs previously failed to raise any concerns under

---

[13]/<u>See also</u> <u>Sierra Club v. Martin</u>, 110 F.3d 1551, 1555 (11th Cir. 1997) (no right to sue for a violation of the APA in the absence of relevant statute whose violation forms the legal basis for the complaint); <u>Preferred Risk Mut. Ins. Co. v. United States</u>, 86 F.3d 789, 792 (8th Cir. 1996) (to obtain APA review, "plaintiff must identify a substantive statute or regulation that the agency action had transgressed"); <u>Save Our Springs v. Babbitt</u>, 27 F. Supp. 2d 739, 746 (W.D. Tex. 1997) (APA review cannot be conducted without considering the relevant substantive statute); <u>Prairie Wood Products v. Glickman</u>, 971 F. Supp. 457, 472 (D. Or. 1997) (APA is "merely a vehicle for carrying substantive challenges to court and does not provide a cause of action independent from the substantive laws governing agency action."); Wright & Miller, 14A <u>Fed. Prac. & Proc. Juris. 3d</u> § 3659 ("[T]here is no right to seek judicial review under the [APA] in the absence of a relevant statute whose violation forms the legal basis of the complaint against the governmental action.").

1    the Regulatory Flexibility Act in their comments on the draft EIS or their appeals to the Decision.

2    See U.S. Memo. at 47.  Plaintiffs respond by citing the appeal of Gerald Hobbs, which expressed

3    concern about the economic effect of the Decision on Public Lands for the People and its members.

4    See Pl. Memo. at 32.  This argument is unavailing.  It is one thing to express general concern about

5    the economic effect of the Decision on prospectors and miners.  It is quite another to assert that the

6    Decision constituted "rulemaking" within the meaning of the Regulatory Flexibility Act that required

7    the preparation of an initial regulatory flexibility analysis.  Accordingly, Claim XIV must be

8    dismissed for failure to exhaust administrative remedies because it cannot be said that the "'claims

9    raised at the administrative appeal and in the federal complaint [are] so similar that the district court

10   can ascertain that the agency was on notice of, and had an opportunity to consider and decide, the

11   same claims now raised in federal court.'" Native Ecoystems Council v. Dombeck, 304 F.3d 886,

12   899 (9th Cir. 2002) (quoting Kleissler v. U.S. Forest Serv., 183 F.3d 196, 202 (3rd Cir. 1999)).

13          Plaintiffs also separately seek under Claim XIV to enforce certain language under FLPMA,

14   43 U.S.C. § 1732(b).  This section commits implementation of the broad objectives described under

15   the statute to the absolute discretion of the Secretary of the Interior.[14]  See 43 U.S.C. § 1732(b)

16   ("under such terms and conditions . . . as the Secretary deems appropriate . . . .").  The APA does not

17   waive the United States' sovereign immunity for claims that challenge such agency actions that are

18   "committed to agency discretion by law."  5 U.S.C. § 701(a)(2); see also Heckler v. Chaney, 470

19   U.S. 821, 830 (1985) (review is not to be had "if the statute is drawn so that a court would have no

20   meaningful standard against which to judge the agency's exercise of discretion.").  Accordingly, the

21   Court lacks subject matter jurisdiction over all of Plaintiffs' challenges raised under Claim XIV.

22          **G.    Plaintiffs Have Failed To Demonstrate A Waiver Of Sovereign Immunity Under
              Their Takings And Damages Claims (Claims XVIII and XX).**

23

24          As discussed in Defendants' opening memorandum, Plaintiffs' takings and damages claims

25   should be dismissed because Plaintiffs have failed to plead these claims under the Little Tucker Act

26   and affirmatively waive the right to seek compensation in excess of $10,000.  These defects deprive

27   
28   [14]/As discussed below in Section II.M., an additional defect in Claim XIV is that 43 U.S.C. § 1732(b)
     only applies to the Secretary of the Interior, not the Secretary of Agriculture.

the court of subject matter jurisdiction over these claims because, unless these requirements are met, the Court of Federal Claims has exclusive jurisdiction.  See Clouser, 42 F.3d at 1539-40; Smith v. Orr, 855 F.2d 1544, 1553 (Fed. Cir. 1988) (district court lacked jurisdiction over claim because plaintiff failed to waive right to recover amount exceeding $10,000); LaFargue v. United States, 4 F. Supp. 2d 580, 587 (E.D. La. 1998) ("The complaint fails to allege the monetary amount of each class member's claim, an amount that must be less than $10,000 to fall under the district court's jurisdiction."); Leveris v. England, 249 F. Supp. 2d 1, 4 (D. Me. 2003) (failure to allege Little Tucker Act claim does not exceed $10,000 deprives court of jurisdiction).

In their response, Plaintiffs state, "[w]ithout conceding the correctness of Defendants' assertions regarding the Tucker Act, this Court has subject matter jurisdiction, up to its jurisdictional amount, to deal with Plaintiffs' claims in Count XVIII."  Pl. Memo. at 39.  This response does nothing more than acknowledge that this Court has a jurisdictional limitation on the amount it can consider under a takings claim.  The response does not identify the Little Tucker Act as providing the waiver of sovereign immunity for Claims XVIII and XX or waive the right to seek compensation in excess of $10,000.  Accordingly, the Court lacks jurisdiction over these claims by virtue of Plaintiffs' failure to demonstrate a waiver of sovereign immunity under the Little Tucker Act.[15]

## II.   Plaintiffs' Additional Arguments Raised In Their Response Are Premised Upon A Misreading Of The Governing Statutes And Case Law.

### A.   Claim II Fails To State A Claim Because Neither The Transfer Act Nor The 1872 Mining Law Deprives The Forest Service Of Authority To Regulate Access To Mining Claims On NFS Lands.

Plaintiffs allege that the Transfer Act, 16 U.S.C. § 472, "prohibits the Secretary of Agriculture from regulating or affecting mining and prospecting on Forest Service lands, including 'entering' for mining purposes on those lands."  Pl. Memo. at 12.  Plaintiffs also allege that "the closure of existing roads violates, among other matters, the 1872 Mining Law, 30 U.S.C. §§ 21-54."  Id.  These assertions fail to state a claim.  The courts have repeatedly affirmed the Forest Service's

---

[15]/Plaintiffs also mistakenly assert that, "Defendants' arguments are aimed only at the Federal Constitution.  Nothing is said about the State Constitutional claim."  Pl. Memo. at 38.  Defendants explained why the Court lacks jurisdiction over Plaintiffs' state constitutional claims in their opening memorandum.  See U.S. Memo. at 30-31, n.24; id. at 35 n.27, id. at 59 n.45.

authority to regulate surface disturbing mining activities – and access to such mining activities – notwithstanding the mining laws.  See, e.g., Clouser, 42 F.3d at 1527-30 (rejecting argument that, due to the Secretary of Interior's authority to implement laws governing validity of mining claims, the Forest Service "lacked statutory authority to regulate ingress to and egress from mining claims located in national forest lands.");  Weiss, 642 F.2d at 299 (notwithstanding 1872 Mining Law, 30 U.S.C. § 21-54, the Secretary of Agriculture "may adopt reasonable rules and regulations which do not impermissibly encroach upon the right to the use and enjoyment of placer claims for mining purposes.").  Accordingly, because Claim II is premised upon a wholly erroneous challenge to this authority, this claim should be dismissed for failure to state a claim.

### B.  Claim III Is Based Upon Plaintiffs' Misunderstanding of the System of Forest Management Created Under NFMA.

Plaintiffs would read NFMA to require a Forest Plan covering the entire NFS be contained in a single document.  Complaint at ¶ 115.  Such an interpretation would turn forest management in this nation on its head.  The Forest Service, an agency of the United States Department of Agriculture, administers the NFS.  The NFS is vast, and "includes 155 national forests, 20 national grasslands, 8 land utilization projects, and other lands that together occupy nearly 300,000 square miles of land located in 44 States, Puerto Rico, and the Virgin Islands."  Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 728 (1998) (citing 16 U.S.C. § 1609(a); 36 C.F.R. § 200.1(c)(2)).  NFMA requires the Secretary of Agriculture to "develop, maintain, and, as appropriate, revise land and resource management plans for units of the National Forest System." 16 U.S.C. § 1604(a).

Forest management under NFMA occurs at two distinct levels.  See Ohio Forestry, 523 U.S. at 728-32; see also Colo. Envtl. Coal. v. Dombeck, 185 F.3d 1162, 1167-68 (10th Cir. 1999).  The first level is embodied by the Forest Plan, a broad, programmatic document, accompanied by an appropriate public review process.  16 U.S.C. § 1604(d).  The Forest Plan for the ENF was completed in 1989.  See FEIS at vii (U.S. Memo., Exh. A, part 1).  At the second level, the Forest Service undertakes site-specific actions, such as the Decision, to achieve the desired conditions in the Forest Plan.  Proposed projects must be consistent with the Forest Plan. See 16 U.S.C. § 1604(i).

Within this context, Plaintiffs' allegations in Claim III fail to state any cognizable claim

1  under NFMA. Plaintiffs assert a NFMA violation for Defendants' failure to prepare a Forest Plan

2  that encompasses the entire NFS.[16] This argument appears to be based upon a complete misreading

3  of 16 U.S.C. § 1609 (defining the NFS as "one integral system") and 16 U.S.C. § 1604(f)(1)

4  (requiring Forest Plans be developed in the form of "one integrated plan for each unit of the National

5  Forest System") (emphasis added to material language omitted by Plaintiffs) to require a single

6  Forest Plan for the entire NFS. Complaint at ¶115. The plain language of NFMA requires the Forest

7  Service to develop a Forest Plan only for each unit of the NFS. 16 U.S.C. § 1604(a). Forest Service

8  regulations define "administrative unit" to mean, a "National Forest," such as the ENF, "a National

9  Grassland, a purchase unit, a land utilization project, Columbia River Gorge National Scenic Area,

10  Land Between the Lakes, Lake Tahoe Basin Management Unit, Midewin National Tallgrass Prairie,

11  or other comparable unit of the National Forest System." 36 C.F.R. § 212.1.

12  Plaintiffs' response merely points out Defendants' acknowledgment that, under certain

13  circumstances, the Forest Service may choose to prepare a Forest Plan for several forests and

14  concludes by stating: "Obviously, this is not what was done." Pl. Memo. at 17. This response

15  entirely fails to address the issue raised by Defendants. To the extent Defendants have

16  misunderstood Plaintiffs' challenge, and Plaintiffs, in fact, are alleging Defendants violated NFMA

17  by failing to develop a Forest Plan for the ENF, Plaintiffs are factually incorrect, as the ENF has a

18  Forest Plan that was prepared in 1989.[17] See FEIS at vii. Further, to the extent Plaintiffs seek to

19  challenge the ENF Forest Plan prepared in 1989, such a challenge would be barred by the statute of

20  limitations. 28 U.S.C. § 2401. Finally, to the extent Plaintiffs attempt to allege that the Decision

21  is inconsistent with the ENF Forest Plan, Plaintiffs have failed to identify a single inconsistency with

22  any specific provision of the ENF Forest Plan. Accordingly, for all these reasons, Plaintiffs fail to

23  state a claim under Claim III.

24  _____

25  [16]/Defendants point out the inconsistency of this argument with Plaintiffs' challenge regarding alleged prohibitions on "national prescriptions." See Pl. Memo. at 15; Complaint at ¶¶124-25.

26  [17]/To the extent Plaintiffs challenge travel management decisions for the Tahoe National Forest and
27  other unspecified NFS lands that have yet to be finalized, Plaintiffs have failed to identify any "final agency action" subject to review under the APA. See Kootenai Tribe of Idaho v. Veneman, 313 F.3d 1094, 1114, n.14 (9th Cir. 2002); see also ONRC Action v. Bureau of Land Management, 150 F.3d
28  1132, 1135 (9th 1998); 5 U.S.C. § 704. Plaintiffs' response does nothing to address this problem.

**C.      Claim IV Fails to State a Claim Under Any Wilderness Statute Plaintiffs Cite.**

Plaintiffs allege an action under the State of California Wilderness Act, California Public Resources Code ("CPRC") § 5093.30 - 5093.40.  Plaintiffs' reliance upon this statute is misplaced. Plaintiffs fail to provide any citation for the proposition that the State of California has any authority to set management direction on federal lands.  Moreover, the plain language of the State of California's Wilderness Act demonstrates that it applies to lands owned by the State of California ("state-owned" lands), not to lands owned by the federal government.  The statute itself is replete with examples:  CPRC § 5093.31 ("all areas on state-owned lands within California"); § 5093.33(a) ("There is hereby established a California wilderness preservation system to be composed of state-owned areas . . . . No state-owned areas shall be designated as 'wilderness areas' except as provided for [herein]"); § 5093.33(c) ("A wilderness area is further defined to mean an area of relatively undeveloped state-owned land"); § 5093.35(a) ("the [Secretary of the California Resources Agency] . . . shall review state owned-roadless areas under his jurisdiction"); and § 5093.35(b) ("the [California] State Lands Commission shall review state-owned roadless areas under its jurisdiction"). The State of California Wilderness Act creates no cause of action entitling Plaintiffs to seek relief. Accordingly, to the extent Plaintiffs have relied upon that statute for asserting Claim IV, it must be dismissed for failure to state a claim.

Likewise, Plaintiffs' claims under the Wilderness Act, 16 U.S.C. §§ 1131-1136, and the California Wilderness Act of 1984 ("1984 CWA"), Pub. L. No. 98-425, 98 Stat. 1619 (1984), rely upon a misinterpretation of these acts.  Plaintiffs erroneously construe these acts to define "wilderness" to include any area without a road, regardless of size or other characteristics, and to prohibit the Forest Service from closing areas on NFS lands to motor vehicle use if they have not been specifically set aside by Congress as "wilderness areas." As Defendants previously pointed out, these acts relate to congressionally-designated "wilderness," and Plaintiffs failed to allege sufficient facts to demonstrate how any alleged "*de facto* wilderness" areas purportedly created by the Forest Service meet the actual definition of "wilderness" in the statutes.  U.S. Memo at 16.  Moreover, Executive Order 11,644, 37 Fed. Reg. 2877 (Feb. 8, 1972), as amended by Executive Order 11,989, 42 Fed. Reg. 26,959 (May 24, 1977), gives the Forest Service explicit authority to close areas to

1  motor vehicle use to protect NFS resources and other specifically enumerated criteria.  Accordingly,

2  Plaintiffs have failed to state a claim under either statute.[18]

3      **D.    Claim V Fails to State a Claim Because MUSYA Does Not Provide A Blanket**
        **Prohibition Against The Forest Service Taking Actions In The NFS That May**
4       **Affect Mineral Resources.**

5      Plaintiffs' arguments under Claim V are based in part upon their misinterpretation of

6  MUSYA, 16 U.S.C. §§ 528-531.  Congress declared the policy and purpose of MUSYA as follows:

7          It is the policy of the Congress that the national forests are established and shall be
           administered for outdoor recreation, range, timber, watershed, and wildlife and fish purposes.
8          The purposes of sections 528 to 531 of this title are declared to be supplemental to, but not
           in derogation of, the purposes for which the national forests were established as set forth in
9          section 475 of this title. Nothing herein shall be construed as affecting the jurisdiction or
           responsibilities of the several States with respect to wildlife and fish on the national forests.
10         Nothing herein shall be construed so as to affect the use or administration of the mineral
           resources of national forest lands or to affect the use or administration of Federal lands not
11         within national forests.

12  16 U.S.C. § 528.  By these terms, MUSYA directs the Secretary of Agriculture to develop and

13  administer five specific renewable resources – outdoor recreation, range, timber, water, and wildlife

14  – on NFS lands for multiple use and sustained yield.  Plaintiffs would invoke MUSYA's multiple

15  use language to require that greater priority be given to mining.  However, this argument does

16  nothing more than to state that Plaintiffs disagree with the agency on how best to manage the NFS

17  resources and Plaintiffs' desire to replace the agency's view with their own.  Such a disagreement

18  and desire provide no claim upon which Plaintiffs can hope to prevail.  The courts have long

19  observed the broad agency discretion provided under MUSYA.  See, e.g., Perkins v. Bergland, 608

20  F.2d 803, 806 (9th Cir. 1978) (MUSYA contains "the most general clauses and phrases" that "can

21  hardly be considered concrete limits upon any agency discretion.  Rather, it is language which

22

23  [18]/Plaintiffs' final response argues that the creation of alleged "buffer zones" is a "question of fact
    better left for trial" and that what the Forest Service says regarding the creation of alleged buffer
24  zones should be disregarded. Pl. Memo at 18-19. Even if true, this does not negate Plaintiffs' failure
    to state a claim, which would require the Court to dismiss Claim IV.  Moreover, Plaintiffs apparently
25  concede that any review of this claim would be undertaken pursuant to the record review procedures
    of the APA. See Complaint at ¶141 (citing "arbitrary and capricious" standard of review in asserting
26  Claim IV).  As discussed in Section I.A., above, a court's review under the APA is generally limited
    to the administrative record, see Camp, 411 U.S. at 142-43, and, when the analysis requires a high
27  level of technical expertise, courts must defer to the informed judgment of the agency.  See Marsh
    v. Or. Natural Res. Council, 490 U.S. 360, 377 (1989); see also Lands Council v. McNair, 537 F.3d
28  981, 993 (9th Cir.2008).  There is no basis for discovery with respect to the alleged "buffer zones."

'breathe(s) discretion at every pore.'") (citation omitted).[19]  The statute certainly does not provide – as suggested by Plaintiffs – a blanket prohibition against any actions in the NFS that may affect mineral resources.  See Pl. Memo. at 19.  Accordingly, Claim V should be dismissed.

**E.    Claim VI Fails To State A Claim Because The Multiple Surface Use Act Does Not Preclude The Forest Service From Regulating Access To Mining Claims.**

Plaintiffs assert that the Multiple Surface Use Act, 30 U.S.C. §§ 612-615, "prohibits the Forest Service from interfering with prospecting or mining operations in the National Forests. 30 U.S.C. § 612(b)."  Pl. Memo. at 20.  Plaintiffs also allege that the "Act further prohibits the Forest Service from limiting or restricting 'any rights of any claimant under any valid mining claim heretofore located,' 60 [sic] U.S.C. § 615."  Id.

These arguments misconstrue the purpose, scope, and language of the Multiple Surface Use Act.  Rather than being enacted to protect the rights of mining claimants, the statute was intended to curb abuses by mining claimants on surface resources.   See U.S. Memo. at 27-28 (discussing United States v. Curtis-Nevada Mines, Inc., 611 F.2d 1277, 1282-83 (9th Cir. 1980) and United States v. Doremus, 888 F.2d 630, 633 (9th Cir. 1989)).[20]  Moreover, the statute – including the "materially interfere" standard of 30 U.S.C. § 612 – does not even apply to regulatory actions outside the boundaries of a mining claim, such as the Forest Service's regulation of access to a mining claim.  See U.S. Memo. at 26-27; Clouser, 42 F.3d at 1539.  Finally, the language of 30 U.S.C. § 615 cited by Plaintiffs merely provides that other provisions of the Multiple Surface Use Act and 30 U.S.C. §§ 601 and 603 shall not be construed "to limit or restrict or to authorize the limitation or restriction of existing rights of any claimant under any valid mining claim heretofore located."  30 U.S.C. § 615, cited in Pl. Memo. at 24.  This language says nothing about – and does nothing to limit – the

[19]/Confusingly, Plaintiffs would simultaneously interpret MUSYA both to prohibit the Forest Service from making any decision that may affect mineral resources in any manner on NFS lands and to require the Forest Service to take certain actions with regard to mining and prospecting activities when making decisions.  Compare Pl. Memo. at 19 and Complaint at ¶143 with Complaint at ¶145.

[20]/The court in Doremus specifically affirmed the Forest Service's authority to require a mining claimant to obtain prior approval from the agency of a plan of operations before commencing surface disturbing operations, notwithstanding the "materially interfere standard" of 30 U.S.C. § 612(b).  See Doremus, 888 F.2d at 633.  This holding rebuts Plaintiffs' assertion that "Doremus had nothing to do [sic] the issue before this Court."  Pl. Memo. at 24.

1   Forest Service's unquestionable authority to regulate access to mining claims under other statutes,

2   such as 16 U.S.C. §§ 478 and 551.[21/] See, e.g., Clouser, 42 F.3d at 1529-30. Accordingly, Claim VI

3   fails to state a claim because the Decision's restrictions on motor vehicle use are entirely consistent

4   with the Multiple Surface Use Act.

5        **F.   Claim VII Fails To State A Claim Because FLPMA Does Not Limit The Forest
             Service's Regulatory Authority To Restrict Motor Vehicle Use Under The
6            Decision To Designated Roads And Trails.**

7        Plaintiffs assert, without citation, that FLPMA, "among other matters, reaffirms miners[']

8   traditional mining rights, granted to them pursuant to Federal mining law, including the right of

9   access to their mining claims." Pl. Memo. at 25. Plaintiffs further assert that "FLPMA applies to

10  all public lands," citing variously 43 U.S.C. §§ 1701, 1715, 1761, 1766, 1768, 1769(b), 1770, and

11  1771. Id. None of the cited statutes supports Plaintiffs' position.

12       To begin with, FLPMA generally applies only to the Secretary of the Interior and "public

13  lands" administered by the Bureau of Land Management, not the Secretary of Agriculture and NFS

14  lands. See 43 U.S.C. § 1702(e) (defining "public lands" to mean "any land and interest in land

15  owned by the United States within the several States and administered by the Secretary of the Interior

16  through the Bureau of Land Management," subject to certain exceptions) (emphasis added); 43

17  U.S.C. § 1702(g) ("The term 'Secretary', unless specifically designated otherwise, means the

18  Secretary of the Interior."). Plaintiffs' assertion that "FLPMA applies to all public lands, 43 U.S.C.

19  § 1701" appears to overlook this limitation on the statute's scope. Pl. Memo. at 25.

20       Moreover, although Plaintiffs do cite a handful of statutory provisions in FLPMA that apply

21  to both the Secretary of the Interior and the Secretary of Agriculture, Plaintiffs fail to establish how

22  these provisions are in any way relevant to the Decision or how they were violated by its approval.

23  For instance, Plaintiffs correctly state that "§ 1715 applies to both the Secretary of Interior and the

24  Secretary of Agriculture." Pl. Memo. at 25. However, Plaintiffs fail to explain how this provision

25

26  ────────────────
    [21/]Additional language in 30 U.S.C. § 615 expressly preserves this regulatory authority. See 30
27  U.S.C. § 615 ("nothing in this subchapter and §§ 601 and 603 of this title shall be construed in any
    manner . . . to limit or repeal any existing authority . . . to limit or restrict any use of the lands
28  covered by any patented or unpatented mining claim by the United States, its lessees, permittees, and
    licensees which is otherwise authorized by law.") (emphasis added).

1   – which concerns the authority of these Secretaries to acquire non-federal lands for access to federal

2   lands under their respective jurisdictions – pertains to the Decision or their claims.   Likewise,

3   Plaintiffs correctly cite the right-of-way provisions of Sections 1761, 1766, 1768, 1769(b), 1770, and

4   1771 as among the limited FLPMA provisions that apply to the Secretary of Agriculture.   See Pl.

5   Memo. at 25.   However, Plaintiffs again fail to demonstrate how these statutory sections – which

6   govern certain types of individual right-of-way grants rather than travel management designations

7   – have any relevance to the Decision.[22/]   Thus, although Plaintiffs have identified various provisions

8   scattered throughout FLPMA that apply to the Secretary of Agriculture, they have failed to explain

9   how the Decision violates any of these provisions, whether by allegedly interfering with any

10   individual rights-of-way issued under FLPMA or otherwise.   In any event, even if Plaintiffs had

11   identified any such provisions, they would still fail to state a claim under Claim VII because the

12   Decision, by its terms, recognizes mining access rights and simply requires Plaintiffs to comply with

13   the Forest Service's regulatory requirements.   See U.S. Memo. at 22-23, 25-26.   Accordingly, for

14   all these reasons, Claim VI should be dismissed for failure to state a claim.

15            **G.**      **Claim VIII Fails To State A Claim Because It Seeks To Impose A Non-Existent**
                      **Duty Upon The Forest Service To Identify And Determine The Validity Of Each**

16                         **And Every Potential R.S. 2477 Right-Of-Way In The ENF.**

17        In their opening memorandum, Defendants asserted that Plaintiffs fail to state a claim under

18   Claim VIII because Plaintiffs seek to impose upon the Forest Service a non-existent duty "to identify

19   all existing, but unproven R.S. 2477 rights-of-way claims within the ENF in order to ensure that no

20   such rights-of-way are closed to public motorized vehicular travel" under the Decision.   See U.S.

21   Memo. at 36 (citing Kane County, 562 F.3d at 1087-88).   Plaintiffs respond by disclaiming any

22   intent to impose such a duty:

23

24   [22/]/Instead of setting forth procedures, criteria, or other requirements applicable to the Decision, these
statutory sections concern: (1) the authority of the Secretaries to "grant, issue, or renew rights-of-

25   way" for certain specified purposes (not including mining access), 43 U.S.C. § 1761; (2) the
conditions upon which such rights-of-way may be suspended or terminated, 43 U.S.C. § 1766; (3)

26   the status of such rights-of-way if the lands on which they are located are conveyed out of federal
ownership, 43 U.S.C. § 1768; (4) rights-of-way for railroad and appurtenant communications

27   facilities, 43 U.S.C. § 1769(b); (5) the applicability of other federal laws governing right-of-way
grants for certain specified purposes (not including mining), 43 U.S.C. § 1770; and (6) requirements

28   concerning coordination between "Federal departments and agencies other than the Department of
Interior or Agriculture" for projects involving FLPMA rights-of-way. 43 U.S.C. § 1771.

> Contrary to Defendants' assertions, the Plaintiffs do not allege that the Forest Service has to identify every RS 2477 road in the ENF. That stands Plaintiffs' allegations on its [sic] head. Plaintiffs allege that if a road is a RS 2477 road, then the Forest Service cannot close it to miners and prospectors, prohibiting them from accessing their mining claims.

Pl. Memo. at 27.[23] This circular logic is unavailing. The determination of whether R.S. 2477 rights-of-way exist for the many roads and trails in the ENF is not self-evident. Rather, such a determination is exceedingly complex, and "litigants are driven to the historical archives for documentation of matters no one had reason to document at the time." S. Utah Wilderness Alliance v. Bureau of Land Mgmt. ("SUWA v. BLM"), 425 F.3d 735, 740-42 (10th Cir. 2005). Accordingly, a necessary element of Claim VIII is that the Forest Service must identify and determine the validity of every potential R.S. 2477 right-of-way in the ENF in order to ensure that no such rights-of-way are closed to miners and prospectors. Therefore, Claim VIII fails to state a claim because it seeks to impose a non-existent duty upon the Forest Service.[24]

### H. Claim IX Under The Omnibus Act Fails To State A Claim Because The Decision Does Not Concern The Substantive Standards Or Procedures To Be Used In Determining The Validity Of R.S. 2477 Claims.

Plaintiffs allege that Pub. L. No. 104-208, § 108, 110 Stat. 3009 (1997) (herein the "Omnibus Act"), "prohibits the Forest Service from [sic] 'the recognition, management or validity' of an RS 2477 right-of-way, unless expressly authorized by an act of Congress." Pl. Memo. at 28. According to Plaintiffs, "the closure by the ENF of RS 2477 roads to miners and prospectors in accessing their mining claims is 'management' of those roads in violation of the Act since it was not specified by Congress." Id. Plaintiffs further argue, "contrary to what Defendants assert, Plaintiffs do not assert any challenge to the validity of an R.S. 2477 road." Id. Instead, "Plaintiffs challenge the closure of such a road to miners and prospectors in order to access their claims, pursuant to the ENF Travel

---

[23]/Plaintiffs also assert that "[i]rrespective of any Forest Service designation, miners and prospectors have the right to use all existing roads, no matter how designated, including RS 2477 roads, to access their mining claims." Pl. Memo. at 26. This contention is a variation on Plaintiffs' argument that they have an unrestricted right of mining access, which is addressed in Section I.B.3., above.

[24]/Plaintiffs fail to address Defendants' arguments that: (1) the Forest Service is authorized to make non-binding determinations of the validity of R.S. 2477 right-of-way for its own management purposes; and (2) even without such authority, Claim VIII would fail because the Decision, by its terms, does not make any determinations concerning the validity of any R.S. 2477 rights-of-way. See U.S. Memo. at 36-37.

1   Management Plan, which is, by its very definition, 'management', and a final rule making that

2   decides the validity of RS 2477 roads in favor of the Forest Service."  Id.

3         These arguments fail.  As previously discussed, the Omnibus Act only applies to final rules

4   or regulations concerning the <u>procedures</u> and <u>substantive standards</u> to be applied in determining the

5   validity of R.S. 2477 claims.  <u>See</u> U.S. Memo. at 37-38, discussing <u>SUWA v. BLM</u>, 425 F.3d at 759,

6   and <u>United States v. Garfield County</u>, 122 F. Supp. 2d 1201, 1237 (D. Utah. 2000).  The Act does

7   not apply to project-level travel management decisions that expressly avoid making any R.S. 2477

8   determinations, such as the Decision.  <u>See</u> Complaint at ¶165 ("Neither the FEIS or ROD deal with

9   the issue of what roads or rights of way are to be closed to miners, prospectors and other citizens

10  subject to the Act of Congress RS 2477.").  Accordingly, Claim IX fails to state a claim because the

11  Decision does not constitute a prohibited rule or regulation under the Omnibus Act.

12  **I.      Claim X Fails To State A Claim Because The APA Does Not Impose Any Substantive Legal Requirements.**

13

14        As discussed in Section I.E., above, the Court lacks subject matter jurisdiction over Claim

15  X because the APA, standing alone, does not provide an independent cause of action.  In addition,

16  because Plaintiffs have identified no substantive legal requirements under the APA that the Decision

    has allegedly violated, Claim X fails to state a claim.

17

18  **J.      Claim XI Fails To State A Claim Because The Mining and Minerals Policy Act of 1970 Imposes No Requirements Upon The Secretary Of Agriculture.**

19        Plaintiffs argue in support of Claim XI that the Mining and Minerals Policy Act of 1970, 30

20  U.S.C. § 21a, "sets forth a policy to develop 'domestic mining, minerals . . . and mineral reclamation

21  industries.'"  Pl. Memo. at 29.  According to Plaintiffs, "[i]t is a national policy, binding on all

22  government agencies, although the Secretary of Interior is specifically authorized to carry out this

23  policy under programs he may administer."  <u>Id.</u>  This argument fails.  As Plaintiffs acknowledge,

24  only the Secretary of the Interior is charged with responsibility for implementing the broad policy

25  described under this statute.  <u>See</u> 30 U.S.C. § 21a ("It shall be the responsibility of the Secretary of

26  the Interior to carry out this policy when exercising his authority under such programs as may be

27  authorized by law other than this section.").  Accordingly, because the statute does not charge the

28

1   Secretary of Agriculture with any implementing responsibility, Claim XI fails to state a claim.[25/]

2   **K.   Claim XII Fails To State A Claim Because The Forest Service Has Well-Established Authority to Regulate Access To Mining Claims.**

3

4   In support of Claim XII under the 1872 Mining Law, 30 U.S.C. §§ 21-54, Plaintiffs argue

5   that, "the Forest Service has no right to require a Plan of Operations, with its potential environmental

6   hurdles in nearly eternal delays, for miners and prospectors who have never had to file for a Plan of

7   Operations in order to use the roads in the National Forests to access their mining claims."  Pl.

8   Memo. at 30.  Plaintiffs further assert, "Defendants do not deny that the road closures to miners and

9   prospectors are prohibitory, not merely regulatory."  Id.

10   As discussed above, the Forest Service has well-established authority to regulate access for

11   proposed mining activities, and the alleged burdens of complying with the Forest Service's

12   regulatory requirements do not excuse Plaintiffs from such compliance.[26/]  Moreover, as previously

13   discussed, the Forest Service regulatory scheme does not constitute a "prohibition" on access to

14   mining claims.  See U.S. Memo. at 22 (explaining that Decision does not "prohibit" access  for

15   mining, but rather regulates such access through a separate administrative process).  Rather, this

16   scheme expressly contemplates that such access is a right under the mining rights – albeit a right that

17   is subject to reasonable regulation by the Forest Service.  Id.  In any event, Plaintiffs' response is

18   devoid of any discussion of any specific provisions under the 1872 Mining Law that are allegedly

19   violated by the Decision.[27/]  Accordingly, Claim XII fails to state a claim.

20   **L.   Claim XIII Fails To State A Claim Because The Americans With Disabilities Act Does Not Apply To Federal Agencies And Because The Decision Does Not Deny Mining Claim Access To Plaintiffs.**

21

22   In their opening memorandum, Defendants demonstrated that the Americans with Disabilities

23   [25/]/Plaintiffs also argue under Claim XI that the courts can compel compliance with the broad

24   "national policy" described under the statute.  Pl. Memo. at 29-30. This argument is discussed in Section I.D., above.

25   [26/]/The reasonableness of these regulations is not at issue because Plaintiffs have both failed to assert

26   a claim challenging their reasonableness and because Plaintiffs fail to allege that they have "attempted to comply with the regulations." Weiss, 642 F.2d at 299 n.5.

27   [27/]/Defendants previously demonstrated why nothing in 30 U.S.C. § 22 imposes an absolute

28   requirement that the National Forests be "free and open" to unrestricted mineral exploration and development.  See U.S. Memo. at 43.  Plaintiffs fail to respond to this argument.

1  Act ("ADA"), 42 U.S.C. § 12132, does not apply to federal agencies.  See U.S. Memo. at 45.

2  Plaintiffs respond that they asserted a claim under the ADA because "the Forest Service has publicly

3  stated that it is bound by ADA, and has implemented regulations to conform with the ADA,

4  specifically § 12132." Pl. Memo. at 31 (citing a Forest Service appeal recommendation and 7 C.F.R.

5  § 15e.101).  According to Plaintiffs, "[p]ublication in the *C.F.R.* by the Forest Service of Regulations

6  implementing § 12132 of ADA binds the public and the Forest Service in its reliance and assertion

7  that the Forest Service is subject to § 12132." Pl. Memo. at 32.

8          Plaintiffs' argument fails because the regulation upon which they rely implements "section

9  119 of the Rehabilitation, Comprehensive Services, and Developmental Disabilities Amendments

10  of 1978, which amended Section 504 of the Rehabilitation Act of 1973 to prohibit discrimination

11  on the basis of handicap in programs or activities conducted by Executive agencies or the United

12  States Postal Service." 7 C.F.R. § 15e.101 (cited in Pl. Memo. at 31).  This statute, codified at 29

13  U.S.C. § 794, is a different statute from the ADA, 42 U.S.C. § 12132, under which Claim XIII is

14  pled.[28]  Moreover, contrary to Plaintiffs' suggestion, "[l]anguage in a regulation may invoke a private

15  right of action that Congress through statutory text created, but it may not create a right that Congress

16  has not." Alexander v. Sandoval, 532 U.S. 275, 291 (2001).  Accordingly, the publication of the

17  referenced regulation in no way affected the ADA or gave Plaintiffs a cause of action under that

18  statute against federal agencies.

19          Claim XIII also fails to state a claim because the Decision does not deny vehicular access to

20  any of Plaintiffs for mining and prospecting activities, including those who are allegedly disabled.

21  See U.S. Memo. at 44-45.  Rather, Plaintiffs may utilize NFS roads and trails that are designated as

22  open under the Decision and may submit a notice of intent or plan of operations to the extent they

23  desire additional motorized access for mining purposes.  Thus, Claim XIII fails to state a claim.

24

25

26  [28]/The appeal recommendation cited by Plaintiffs alternately suggests that the ADA and
Rehabilitation Act are the same or separate statutes.  Compare recommendation at 4 ("42 U.S.C. §
27  12132, also known as Section 504 of the Rehabilitation Act of 1973 . . . .") with id. at 5 ("I find that
the Forest Supervisor's decision does not violate the ADA or Section 504 of the Rehabilitation Act
28  of 1973.").  Nonetheless, the recommendation does not change the applicable law and is not subject
to the rules governing publication of regulations by a federal agency upon which Plaintiffs rely.

**M.    Claim XIV Fails To State A Claim Because Neither The Regulatory Flexibility Act Nor Section 1732(b) Of FLPMA Applies To The Decision.**

In their opening memorandum, Defendants asserted that the Regulatory Flexibility Act did not require the preparation of an initial regulatory flexibility analysis in connection with the Decision because the Decision did not constitute a "proposed rule" requiring publication of "general notice of proposed rulemaking." 5 U.S.C. § 603(a) (discussed in U.S. Memo. at 47-48).   Rather, the Decision constituted a project-level decision that, by regulation, was to be prepared in accordance with the Forest Service's "public participation" requirements. See 36 C.F.R. § 212.52 (providing for public participation, not publication of general notice of proposed rulemaking under the APA, when designating NFS roads, trails, and areas for motor vehicle use); see also 16 U.S.C. § 1604 ("The Secretary shall provide for public participation in the development, review, and revision of land management plans.") (emphasis added).

Plaintiffs respond by arguing that 5 U.S.C. § 603(a) "applies to all rulemakings, including the ENF Travel Management Plan, whether such rulemaking is pursuant to NFMA or any other statute." Pl. Memo. at 33.  Plaintiffs' argument fails.  Plaintiffs never explain how or cite any authority establishing that the Decision qualifies as a "proposed rule" requiring publication of "general notice of proposed rulemaking," which is a necessary predicate to the requirement that an agency prepare an initial regulatory flexibility analysis.  5 U.S.C. § 603(a).  As previously explained, the Secretary of Agriculture is required under the NFMA to publish a general notice of proposed rulemaking when adopting regulations "that set out the process for the development and revision of the land management plans, and the guidelines and standards prescribed by this subsection."[29]  16 U.S.C. § 1604(g) (emphasis added).  No statutory provision, regulation, or other requirement subjects the Secretary or the Forest Service to these formal rulemaking procedures when making site-specific designations of NFS roads and trails in a travel management decision.

Plaintiffs further assert that the Forest Service's position is that it need only "allow for

---

[29]/In accordance with this requirement, Defendants complied with the Regulatory Flexibility Act for the 2005 Travel Management Rule and subsequent agency directives concerning the rule.  See 70 Fed. Reg. at 68,287; 73 Fed. Reg. 74,689, 74,702-03 (Dec. 9, 2008).  Plaintiffs err in suggesting that Defendants previously asserted that they undertook compliance for the Decision under the Regulatory Flexibility Act.  Compare Pl. Memo. at 34 with U.S. Memo. at 48.

1   'public participation' but not notice of or publication of a flexibility analysis." Pl. Memo. at 34.

2   According to Plaintiffs, "[t]his logic makes 'public participation' meaningless, because without

3   notice of and publication of a flexibility analysis, there is nothing for the public, and especially small

4   and medium size miners, to participate in regarding the correctness or impact of the flexibility

5   analysis upon them." Id. This argument completely misconstrues Defendants' position. Defendants

6   assert that the Decision was not subject to the Regulatory Flexibility Act because the governing

7   statutes and regulations require "public participation" – as opposed to publication of a general notice

8   of proposed rulemaking – when the Forest Service prepares its travel management decisions.

9   Defendants do not assert that they needed to prepare an initial regulatory flexibility analysis for the

10  Decision, but did not need to provide any notice or publication of this analysis. In any event,

11  Plaintiffs are mistaken in suggesting that only the formal rulemaking procedures of the APA allow

12  for meaningful public participation. Indeed, Plaintiffs submitted multiple comments and appeals

13  pursuant to the notice and comment procedures followed in connection with the Decision.

14          Finally, Plaintiffs assert under Claim XIV in a challenge raised under FLPMA that the

15  "national policy regarding small business set forth in § 1732(b) applies to both the Secretary of the

16  Interior and the Secretary of Agriculture, and other agencies in the Federal government." Pl. Memo.

17  at 34. This argument flatly conflicts with the language of Section 1732(b), which only applies to

18  the Secretary of the Interior and the "public lands" managed by the Bureau of Land Management,

19  not the Secretary of Agriculture and NFS lands. See 43 U.S.C. § 1732(b) ("In managing the public

20  lands, the Secretary under such terms and conditions as are consistent with such law, regulate,

21  through easements, permits, leases, licenses, published rules, or other instruments as the Secretary

22  deems appropriate, the use, occupancy, and development of the public lands, . . . to permit

23  individuals to utilize public lands for habitation, cultivation, and the development of small trade or

24  manufacturing concerns . . . .") (emphasis added); 43 U.S.C. § 1702(g) ("The term 'Secretary',

25  unless specifically designated otherwise, means the Secretary of the Interior.") (emphasis added);

26  43 U.S.C. § 1702(e) (defining "public lands" to mean "any land and interest in land owned by the

27  United States within the several States and administered by the Secretary of the Interior through the

28  Bureau of Land Management," subject to certain exceptions not relevant here) (emphasis added).

1    Thus, for all these reasons, Claim XIV fails to state a claim.

2        **N.    Claim XV Should Be Dismissed Because Plaintiffs Have Abandoned This**
         **Challenge.**
3
4        Because Plaintiffs have indicated that they will not pursue Claim XV pled under 18 U.S.C.

5    § 666, see Pl. Memo. at 35, this claim should be dismissed.

6        **O.    Claim XVI Fails To State A Claim Because An Easement By Necessity Is Not**
         **Available Over NFS Lands And Because Plaintiffs Fail To Allege The Elements**
         **Of Such An Easement For Any Specific Mining Claims.**
7
8        In their opening memorandum, Defendants asserted that Claim XVI fails to state a claim,

9    among other reasons, because an easement by necessity is not available on NFS lands and because

10   Plaintiffs failed to plead the elements of an easement by necessity with respect to any particular

11   mining claims.  See U.S. Memo. at 53 (citing Fitzgerald Living Trust v. United States, 460 F.3d

12   1259, 1267 (9th Cir. 2006); United States v. Jenks, 129 F.3d 1348, 1353-54 (10th Cir. 1997)).

13   Plaintiffs respond by stating "Defendants . . . claim that you cannot have any easement  by necessity

14   against the United States over Forest Service lands, but then undercut their own argument by

15   recognizing if there is a statutory right of access, such an easement may exist. *United States v. Jenks*,

16   129 F.3d 1348, 1353-54 (10th Cir. 2007)."  Pl. Memo. at 36.  Plaintiffs further assert an easement

17   by necessity "is created by Federal mining law" and that Defendants are mistaken in challenging

18   Plaintiffs' claim to such an easement "according to traditional real property law."  Id.  Finally,

19   Plaintiffs allege that they are not subject to Forest Service regulation of their alleged rights of access

20   based upon unsubstantiated allegations of agency hostility "to small and medium size miners" and

21   the prospect of "endless environmental challenges."  Id. at 37.

22       Plaintiffs' position completely mischaracterizes Defendants' position, the holding in Jenks,

23   the elements of an easement by necessity, and the Forest Service's regulatory authority.  The court

24   in Jenks held the defendant in that case did not possess an easement by necessity because other

25   potential rights of statutory access rendered such an easement unnecessary over NFS lands.  See

26   Jenks, 129 F.3d at 1353-54 ("[i]f and after" easements for public roads held by county "lapse or

27   terminate, Defendant in all likelihood will still have a statutory right of access under ANILCA and

28   FLPMA, or some other federal statutory scheme, albeit subject to  reasonable  government

regulation."). Moreover, Plaintiffs err in arguing – and cite no legal authority in support of their contention that – an easement by necessity is created by federal mining law rather than real property law. As discussed in <u>Fitzgerald</u> and <u>Jenks</u>, an easement by necessity is a specific type of access right, and Plaintiffs have not – and cannot – successfully plead their ability to satisfy the elements of such a right over NFS lands. To the extent Plaintiffs in this case claim entitlement to a right-of-way under "ANILCA and FLPMA, or some other federal statutory scheme," <u>Jenks</u>, 129 F.3d at 1353, they must submit a right-of-way application in accordance with the Forest Service's governing regulatory requirements. As discussed above, Plaintiffs are not exempt from these requirements based upon unsubstantiated allegations of agency bias and delay. Accordingly, Claim XVI fails to state a claim.

### P. Claim XVII Fails To State A Claim Because Plaintiffs Do Not Hold Unimpeded Rights Of Access To The ENF For Mining And Prospecting Purposes.

Defendants previously asserted that Plaintiffs' claimed entitlement to an implied right to use the public lands under Claim XVII fails to state a claim because Plaintiffs do not hold the right "to access their mining claims and mineral estates <u>in an unimpeded manner</u>." Complaint at ¶214 (emphasis added) (discussed in U.S. Memo. at 54). Plaintiffs respond by alleging "Count XVII squarely deals with the issue of miners and prospectors [sic] right of access to their mining claims under Federal Mining Law." Pl. Memo. at 37. Plaintiffs further assert, "[a]s with Count XVI this is not an issue of real property law, and this Court is the proper Court to decide that issue pursuant to Federal mining law." <u>Id.</u> at 37-38. These arguments are largely unresponsive to Defendants' challenge and certainly do not establish that Plaintiffs hold the unimpeded rights of access upon which this claim is premised. Accordingly, Claim XVII fails to state a claim.

### Q. Claims XVIII And XX Fail To State A Claim Because Plaintiffs Have Failed To Identify Any Alleged Mining Claims, Roads, Or Rights-Of-Way That Are The Subject Of These Claims And Because They Have No Legal Interest In Any Public Roads Or Rights-Of-Way That Are Not Designated Under The Decision.

Defendants moved for dismissal of Claims XVII and XX for failure to satisfy the basic pleading requirements of Fed. R. Civ. P. 8(a) because Plaintiffs have not identified any alleged mining and/or associated access rights that have allegedly been taken by approval of the Decision. <u>See</u> U.S. Memo. at 59. Defendants also asserted that these claims fail to state a claim because the Decision only designates NFS roads and trails and does not regulate any private rights of access that

1   Plaintiffs may purport to own.  Id.  To the extent Plaintiffs assert any takings based upon the alleged

2   closure of State and County roads, they have no compensable property interests in those routes.  See

3   id. at 59-60 (citing Holden v. United States, 38 Fed. Cl. 732, 737 (1997)).

4          Plaintiffs respond that "Defendants appear to be seeking a metes and bounds description" and

5   that further specificity in their claims is available through discovery.  Pl. Memo. at 39.  Plaintiffs

6   further argue that, "Defendants rely on highway cases involving the general public that have

7   absolutely nothing to do with mining or access to mining claims."  Id. at 39-40 (citing Holden).

8   These arguments are without merit.  Because Plaintiffs rely upon conclusory assertions of a taking

9   without identifying any mining claims, roads, or rights-of-way that are the subject of Claims XVIII

10  and XX, these claims fail to satisfy the requirements of Rule 8(a).  As in Twombly, "a defendant

11  seeking to respond to plaintiffs' conclusory allegations . . . would have little idea where to begin,"

12  550 U.S. at 565 n.10, and discovery is not an appropriate remedy for Plaintiffs' entirely inadequate

13  pleading.  See Ashcroft, 129 S. Ct. at 1950.  Moreover, contrary to Plaintiffs' assertions, Holden had

14  everything to do with mining and access to mining claims.  The plaintiffs in that case specifically

15  alleged a taking based upon the alleged denial of access to certain specified mining claims, and the

16  court specifically ruled, among other things, that "members of the public have no proprietary interest

17  in [a public] road and cannot sue for a taking when a road is closed, even though the closure causes

18  them inconvenience or financial hardship."  Holden, 38 Fed. Cl. at 737.  Accordingly, Claims XVIII

19  and XX fail to state a claim.[30]

20                                **CONCLUSION**

21          For all the foregoing reasons, Claims II through XVIII and Claim XX should be dismissed

22  for lack of subject matter jurisdiction and failure to state a claim.

23

24

25

26

27

28  [30]/As discussed above in footnote 1, above, Plaintiffs have failed to identify any waiver of sovereign
    immunity that would allow them to assert a monetary claim separate from their takings claim.

1    Respectfully submitted this 8th day of January, 2010.

2                                          IGNACIA S. MORENO
                                           Assistant Attorney General
3                                          Environment and Natural Resources Division

4                                           /s/ Jason A. Hill
                                           Jason A. Hill
5                                          Trial Attorney

6
                                            /s/ Thomas K. Snodgrass
7                                          Thomas K. Snodgrass
                                           Trial Attorney
8
OF COUNSEL
9
Rose Miksovsky
10   U.S. Department of Agriculture
     Office of the General Counsel
11   33 New Montgomery St., 17th Floor
     San Francisco, CA 94105
12
     Ellen R. Hornstein
13   U.S. Department of Agriculture
     Office of the General Counsel
14   Natural Resources Division
     1400 Independence Avenue, S.W.
15   Washington, D.C. 20250-1412

16

17

18

19

20

21

22

23

24

25

26

27

28