1

2

3

4

5                    UNITED STATES DISTRICT COURT

6               FOR THE EASTERN DISTRICT OF CALIFORNIA

7

PUBLIC LANDS FOR THE PEOPLE,
8  INC., et al.,

9                                  NO. CIV. S-09-1750 LKK/JFM
          Plaintiffs,
10

      v.
11

UNITED STATES DEPARTMENT
12  OF AGRICULTURE, et al.,
                                        O R D E R
13

          Defendants.
14  _____/

15       The plaintiffs, who are miners, challenge the United States

16  Forest Service's 2008 "Travel Management Plan" for the El Dorado

17  National Forest ("2008 Plan" and "ENF"). They filed suit against

18  the United States Department of Agriculture, its subsidiary, the

19  United States Forest Service ("Forest Service"), and four federal

20  officials, alleging that the 2008 plan violated their rights of

21  access for mining and prospecting activities by limiting motorized

22  vehicle use of Forest Service roads in the ENF. Plaintiffs'

23  original complaint, which challenged the 2008 Plan under twenty

24  causes of action invoking several theories of liability, was

25  dismissed primarily on jurisdictional grounds. Plaintiffs have

26  since filed their first amended complaint ("FAC").

                                   1

1   Since the submission of their original complaint, plaintiffs'
2   claims have narrowed considerably. Plaintiffs' operative complaint
3   now states only two claims generally maintaining that the Forest
4   Service unlawfully interfered with plaintiffs' alleged rights of
5   access to the ENF for mining and prospecting activities and that
6   the Forest Service lacks the authority to require all prospectors
7   and miners to file a Notice of Intent or Plan of Operations
8   ("NI/PO") in seeking access to Forest Service roads that are closed
9   to motor vehicle use under the 2008 Plan.

10   Defendants move to dismiss plaintiffs' FAC for failure to
11   state a claim, arguing that plaintiffs' claims conflict with well-
12   established case law as well as the authority on which they are
13   premised. The court resolves the motion on the papers and after
14   oral argument. For the reasons stated below, the court grants
15   defendants' motion.

16                          **I. BACKGROUND**

17   **A.    Plaintiffs**

18   Plaintiff Public Lands for the People, Inc., is a nonprofit
19   "nationwide organization of miners . . . and prospectors." FAC ¶
20   16. The seven individual plaintiffs are all members of this
21   organization. Only four plaintiffs are alleged to own mining
22   claims within ENF, although a fifth allegedly "utilizes" the ENF
23   for prospecting and a sixth allegedly sold a claim "because of a
24   general policy of the ENF to close roads to motorized vehicles."
25   ¶¶ 17-22. The last individual plaintiff alleges that he has
26   "expressed interest and desire to prospect and mine in the ENF."

1 ¶ 17. More generally, plaintiffs allege that there are three

2 hundred and sixty-five[1] valid existing mining estates and claims

3 in the ENF, many of which are active. ¶ 32,

**B.   The 2008 ENF Travel Management Plan**

5      Plaintiffs in the instant action challenge the Forest

6 Service's 2008 Plan for the ENF, which "regulate[s] unmanaged

7 public wheeled motor vehicle use by allowing use on specific

8 National Forest Transportation System (NFTS) roads and trails .

9 . . ." Record of Decision ("ROD"), Doc. No. 51-2, at 4.

10      The first step in adoption of the 2008 Plan was taken on

11 October 16, 2005. On that date, the Forest Service published a

12 notice of intent to prepare an environmental impact statement in

13 support of a travel management decision for the Eldorado

14 National Forest. See FEIS at 1-9. The Forest Service states that

15 it took this step for two reasons.

16      One reason was that in Center for Sierra Nevada

17 Conservation v. Berry, No. 2:02-cv-00325-LKK-JFM (E.D. Cal.)

18 ("Berry") the undersigned ordered the Forest Service to

19 reexamine the issue. Berry concerned a challenge to an

20 "Off-Highway Vehicle Plan" for ENF that the Forest Service

21 adopted in 1990. On August 16, 2005, this court ordered the

22 Forest Service to withdraw the 1990 plan and to "issue a Final

23 Environmental Impact Statement and Record of Decision on a new

24 ENF [Off-Highway Vehicle] Plan (or site-specific area plans)."

25 _____

26      [1] Plaintiffs attribute this figure to the Bureau of Land
Management without citation.

3

1    The second reason was that in 2005 the Forest Service

2 published a general rule requiring the Forest Service to

3 designate a system of roads, trails, and areas for motor vehicle

4 use for all administrative units of the National Forest System

5 ("NFS") in accordance with certain criteria. This rule was

6 published on November 9, 2005, subsequent to publication of the

7 notice of intent for the Eldorado Travel Management Decision.

8 See 70 Fed. Reg. 68,264 (Nov. 9, 2005). It is unclear whether

9 the 2005 Rule was influenced or motivated by the Berry

10 litigation. Nonetheless, the Forest Service indicates that the

11 notice of intent for the Eldorado Travel Management Decision was

12 published in anticipation of the November rule and that the

13 final ENF decision comports with this rule.

14    After publication of the October 16, 2005 notice, the

15 Forest Service conducted public meetings and solicited public

16 comments. The Forest Service then published a draft

17 Environmental Impact Statement on July 20, 2007. The draft

18 environmental impact statement ("DEIS") considered five

19 alternatives. The Forest Service ultimately adopted a

20 modification of alternative B for the 2008 Plan, publishing a

21 ROD on March 31, 2008 and a final EIS two days thereafter, on

22 April 2, 2008. This decision allows motor vehicle use on 242

23 miles of NFS trails and 1,002 miles of "ML-2" roads, which are

24 roads "maintained for high clearance vehicles." FEIS at xviii,

25 ix. Plaintiffs allege that "the closure of existing roads,

26 rights of way, and haul roads in the ENF to motorized vehicles"

1  effectuated by the 2008 Plan "affects over 50% of the total
2  roads and rights of way in the ENF." FAC ¶ 40.

3      The parties agree that miners may in some circumstances use
4  motorized vehicles on roads closed to the general public. Under
5  Forest Service regulations, travel management decisions do not
6  restrict "[m]otor vehicle use that is specifically authorized
7  under a written authorization issued under Federal law or
8  regulations." 36 C.F.R. § 212.51(a)(8). The Forest Service
9  contends that miners must secure such authorization by filing a
10 Notice of Intent or Plan of Operations under 36 C.F.R. § 228.4.
11 The EIS itself explained that "[i]n the event that ground
12 disturbing activities or the use of public lands are such to
13 warrant the need for a Plan of Operations, an environmental
14 analysis will be completed[.] This Plan of Operations or other
15 authorization may include the use of specific roads or trails
16 not otherwise open to public wheeled motor vehicle use." FEIS at
17 3-212. Plaintiffs, however, contend that the 2008 Plan violates
18 miners' rights of access insofar as it requires plaintiffs to
19 utilize these procedures. ¶ 47. Plaintiffs alternatively argue
20 that the 2008 Plan, interpreted in light of the 2005 Rule, does
21 not require miners to do so, and that the Forest Service's
22 contrary interpretation of its own plan is flawed. ¶¶ 7, 53.

23      **C.   The Notice of Intent/Plan of Operations Requirement**

24      Although the parties disagree as to whether miners must
25 file a NI/PO prior to using roads not open to the public, there
26 is no dispute as to what the NI/PO process itself involves. See

5

1  <u>Park Lake Resources v. United States Dep't of Agric.</u>, 197 F.3d
2  448, 450 (10th Cir. 1999) (summarizing these regulations). A
3  notice of intent is the simpler document. The regulation
4  requires a notice of intent for any operations that "*might cause*
5  *significant disturbance of surface resources*." 36 C.F.R. §
6  228.4(a) (emphasis added). "Operations" include the use of
7  "roads and other means of access." 36 C.F.R. § 228.3(a). The
8  Forest Service contends that use of motorized vehicles on roads
9  not designated for such use is by definition activity that
10  "might cause significant disturbance of surface resources"
11  because such roads would otherwise remain undisturbed. <u>See</u>
12  Defs.' Mem. Supp. Mot. to Dismiss, Doc. No. 51-1, at 22. Thus,
13  at a minimum, a miner seeking to use such roads must submit a
14  notice of intent.

15      "[I]f the proposed operations *will likely cause*" a
16  disturbance of surface resources a more elaborate plan of
17  operations is required. 36 C.F.R. § 228.4(a)(3) (emphasis
18  added). If a miner submits a notice of intent, within 15 days of
19  receipt of the notice of intent the District Ranger will
20  determine whether the proposed activity crosses the "will likely
21  cause" threshold, such that "a proposed plan of operations is
22  required before operations may begin." 36 C.F.R. § 228.4(a)(2).
23  Alternatively, a miner may submit a plan of operations
24  initially. If a plan of operations is submitted under either
25  pathway, operations cannot commence until the Forest Service
26  affirmatively approves the plan. 36 C.F.R. § 228.12.

1          D.    **Procedural History**

2          Plaintiffs filed suit challenging the 2008 Plan on June 24,

3   2009, broadly asserting that the plan unlawfully interfered with

4   their statutory rights of access to the ENF for mining and

5   prospecting purposes. On October 2, 2009, defendants moved to

6   dismiss eighteen of plaintiffs' twenty claims on the grounds of

7   lack of jurisdiction and failure to state a claim. On August 5,

8   2010, the court issued an order (the "Order") dismissing with

9   leave to amend plaintiffs' original complaint primarily on

10  jurisdictional grounds. Order, Doc. No. 46. The court found,

11  inter alia, that plaintiffs' claims that the 2008 Plan prohibits

12  access to mining sites and that the burden imposed on miners by

13  the notice of intent/plan of operations process amounts to a

14  prohibition on mining are not fit for judicial review. Id. at

15  28-29. Plaintiffs claims that the Forest Service lacks the

16  authority to require miners to submit a notice of intent or plan

17  of operations at all and that the Forest Service was required to

18  evaluate impacts on existing property rights prior to adopting

19  the 2008 Plan were found fit for review. Id. at 29-31. Further,

20  the court dismissed fifteen of plaintiffs' claims on the grounds

21  that they lacked standing to bring such claims. Id. at 51-55.

22  Specifically, the court found that plaintiffs must identify the

23  specific mining claims and particular road closures that limit

24  their access to such claims. Id. The court reserved judgment on

25  the majority of defendants' arguments seeking dismissal for

26  failure to state a claim. Id. at 55. However, the court did note

1  the existence of several Ninth Circuit cases recognizing the

2  Forest Service's authority "to require miners to comply with the

3  notice of intent and plan of operations procedures." Id. at 25

4  n.11.

5       On September 1, 2010, plaintiffs filed their amended

6  complaint. Doc. No. 47. Plaintiffs now bring two causes of

7  action: (1) that the Forest Service has violated miners' rights

8  of access under numerous federal statutes and regulations and

9  the order of this court in Sierra Nevada Conservation, et al. v.

10 Berry, 2:02-cv-0325; and (2) that the Forest Service has

11 unlawfully exceeded its regulatory authority. They seek

12 declaratory and injunctive relief for both claims.[2] In this

13 amended complaint, plaintiffs do not identify any specific

14 mining claims. Rather, they merely identify the identity of the

15 owner of the claim. Further, the complaint only identifies the

16 closed roads with respect to two mining claims: that of Bryan

17 Bunting and Hillarie Bunting and that of Gene E. Bailey.

18 Defendants filed the instant motion to dismiss on October 18,

19 2010. Doc. No. 51.

20 ////

21 ////

22 **////**

23 **////**

24

25      [2] Plaintiffs identify declaratory and injunctive relief as
   separate causes of action. Both, however, are entirely predicated
26 on the two substantive causes of action.

8

1                          **II. STANDARDS**

2          **A.    Fed. R. Civ. P. 12(b)(1) Motion to Dismiss**

3          It is well established that the party seeking to invoke the

4    jurisdiction of the federal court has the burden of establishing

5    that jurisdiction exists.  <u>KVOS, Inc. v. Associated Press</u>, 299

6    U.S. 269, 278 (1936); <u>Assoc. of Medical Colleges v. United</u>

7    <u>States</u>, 217 F.3d 770, 778-779 (9th Cir. 2000).  On a motion to

8    dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the standards that

9    must be applied vary according to the nature of the

10   jurisdictional challenge.

11         When a party brings a facial attack to subject matter

12   jurisdiction, that party contends that the allegations of

13   jurisdiction contained in the complaint are insufficient on

14   their face to demonstrate the existence of jurisdiction.  <u>Safe</u>

15   <u>Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004).

16   In a Rule 12(b)(1) motion of this type, the plaintiff is

17   entitled to safeguards similar to those applicable when a Rule

18   12(b)(6) motion is made.  <u>See</u> <u>Sea Vessel Inc. v. Reyes</u>, 23 F.3d

19   345, 347 (11th Cir. 1994), <u>Osborn v. United States</u>, 918 F.2d

20   724, 729 n.6 (8th Cir. 1990); <u>see also</u> 2-12 Moore's Federal

21   Practice - Civil § 12.30 (2009).  The factual allegations of the

22   complaint are presumed to be true, and the motion is granted

23   only if the plaintiff fails to allege an element necessary for

24   subject matter jurisdiction.  <u>Savage v. Glendale Union High Sch.</u>

25   <u>Dist. No. 205</u>, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003), <u>Miranda</u>

26   <u>v. Reno</u>, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001). Nonetheless,

                                     9

district courts "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" when resolving a facial attack. <u>Safe Air for Everyone</u>, 373 F.3d at 1039.

Alternatively, when a party brings a factual attack, it "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." <u>Id.</u> Specifically, a party converts a motion to dismiss into a factual motion where it "present[s] affidavits or other evidence properly brought before the court" in support of its motion to dismiss. <u>Id.</u> Unlike in a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court need not assume the facts alleged in a complaint are true when resolving a factual attack. <u>Id.</u> (citing <u>White v. Lee</u>, 227 F.3d 1214, 1242 (9th Cir. 2000). While the motion is not converted into a motion for summary judgment, "the party opposing the motion must [nonetheless] furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." <u>Id.</u> When deciding a factual challenge to subject matter jurisdiction, district courts may only rely on facts that are not intertwined with the merits of the action. <u>Id.</u>

**B.   Fed. R. Civ. P. 12(b)(6) Motion to Dismiss**

A Fed. R. Civ. P. 12(b)(6) motion challenges a complaint's compliance with the pleading requirements provided by the Federal Rules. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim

1   showing that the pleader is entitled to relief."  The complaint

2   must give defendant "fair notice of what the claim is and the

3   grounds upon which it rests."  <u>Bell Atlantic v. Twombly</u>, 550

4   U.S. 544, 555 (2007) (internal quotation and modification

5   omitted).

6        To meet this requirement, the complaint must be supported

7   by factual allegations.  <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, ___,

8   129 S. Ct. 1937, 1950 (2009).  "While legal conclusions can

9   provide the framework of a complaint," neither legal conclusions

10  nor conclusory statements are themselves sufficient, and such

11  statements are not entitled to a presumption of truth.  <u>Id.</u> at

12  1949-50.  <u>Iqbal</u> and <u>Twombly</u> therefore prescribe a two step

13  process for evaluation of motions to dismiss.  The court first

14  identifies the non-conclusory factual allegations, and the court

15  then determines whether these allegations, taken as true and

16  construed in the light most favorable to the plaintiff,

17  "plausibly give rise to an entitlement to relief."  <u>Id.</u>;

18  <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007).

19       "Plausibility," as it is used in <u>Twombly</u> and <u>Iqbal</u>, does

20  not refer to the likelihood that a pleader will succeed in

21  proving the allegations.  Instead, it refers to whether the

22  non-conclusory factual allegations, when assumed to be true,

23  "allow[] the court to draw the reasonable inference that the

24  defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 129

25  S.Ct. at 1949. "The plausibility standard is not akin to a

26  'probability requirement,' but it asks for more than a sheer

11

1  possibility that a defendant has acted unlawfully." Id.

2  (quoting Twombly, 550 U.S. at 557).  A complaint may fail to

3  show a right to relief either by lacking a cognizable legal

4  theory or by lacking sufficient facts alleged under a cognizable

5  legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696,

6  699 (9th Cir. 1990).

7                          **III. ANALYSIS**

8       Plaintiffs complain that the Forest Service exceeded its

9  statutory authority and violated plaintiffs' rights of access to

10 the ENF for mining and prospecting activities by requiring all

11 prospectors and miners to file a Notice of Intent or Plan of

12 Operations ("NI/PO") in seeking to access Forest Service roads

13 that are closed to motor vehicle use under the 2008 Plan.

14 Defendants' move to dismiss plaintiffs' FAC for failure to state

15 a cognizable legal claim. They do not, however, move to dismiss

16 for lack of standing even though plaintiffs' have not pled the

17 facts the court found necessary to demonstrate standing in its

18 order on defendants' first motion to dismiss. For the reasons

19 enumerated below, plaintiffs' complaint is dismissed for lack of

20 standing. Alternatively, assuming the court has standing over

21 this case, the court finds that the complaint should be

22 dismissed for failure to state a claim.

23      **A.   Standing**

24      In its August 5, 2010 order, the court found that

25 plaintiffs must "specify particular mining claims and particular

26 road closures that limit plaintiffs' ability to access those

1   claims" in order to demonstrate standing. Order at 52. The court
2   conducted a thorough review of the relevant standing
3   jurisprudence, see id. at 51-55, which the court here
4   summarizes. First, the court concluded that the evidence
5   demonstrates that plaintiffs could provide the specific facts of
6   their mining claims and the particular road closures now. Id. at
7   52-54. The court, then, considered what standard to apply when
8   standing is challenged at the pleading stage. Id. at 54. While
9   recognizing that "general factual allegations of injury
10  resulting from the defendant's conduct may suffice," the court
11  nonetheless found that, "in this case, it is appropriate to
12  require greater specificity at this stage." Id. at 54 (quoting
13  Or. v. Legal Servs. Corp., 552 F.3d 965, 969 (9th Cir. 2009)
14  (internal quotations omitted)). The court reasoned that
15  plaintiffs are required to plead standing with specificity in
16  this case because plaintiffs had neither identified any need for
17  discovery on this issue nor have they identified any other
18  factor preventing them from providing this specificity now." Id.
19  at 55. Plaintiffs have not moved for reconsideration of this
20  aspect of this order and have presented no arguments in the
21  instant motion concerning whether they have sufficiently pled
22  standing.
23       It is plainly apparent that plaintiffs have not pled
24  standing with the level of specificity the court required in its
25  prior order. There are seven natural persons plaintiffs, who are
26  members of the entity plaintiff, Public Lands for the People,

1  Inc. No specific mining claims were identified for any of these

2  plaintiffs. Plaintiffs did, however, allege some road closures.

3  Particularly, Bryan Bunting and Hillarie Bunting alleged that

4  their "access to their Federal mining claims and mineral estates

5  has been closed pursuant to the FEIS and ROD, in that Forest

6  Road 13N92 is now closed to wheeled motorized vehicles." FAC ¶

7  18. Additionally, Gene E. Bailey alleged that his "access to his

8  Federal mining claims and mineral estates has been closed

9  pursuant to the FEIS and ROD, in that approximately 3.1 miles of

10 Forest Road 14N25G is now closed to wheeled motorized vehicles."

11 Id. at ¶ 21. As to the remaining natural person plaintiffs,

12 Gerald E. Hobbs only identified the forests in which he claims

13 to have mining claims and mineral estates, Steve Wandt sold his

14 mining claim, Randy Burleson is a prospector and failed to

15 identify any specific road closings, and Richard Nuss simply

16 states that he has mining claims and estates and that if roads

17 are closed pursuant to the plan, the roads to his claims will be

18 closed. Id. at ¶¶ 17, 19, 20, 22.

19      The court, thus, dismisses this case for lack of standing

20 due to plaintiffs' failure to specify the specific mining claims

21 and road closures that prevent access to those claim in their

22 FAC.

23      **B.   Failure to State a Claim**

24      Alternatively, the court finds that plaintiffs' complaint

25 should be dismissed for failure to state a claim. The court

26 addresses each of plaintiffs' claims below.

                                  14

1        **1.    The United States Forest Service Has Statutory**
2             **Authority to Regulate Mining Claim Access on NSF**
3             **Lands**

4        Plaintiffs contend that the Forest Service lacks the
5    authority to require miners to submit a notice of intent or
6    plan of operations to use roads and trails that are not
7    designated as open to motor vehicle use under the 2008 Plan to
8    access their mining claims. FAC ¶ 7, 47; Pls.' Opp. at 12.
9    Defendants maintain, however, that plaintiffs' argument
10   "squarely conflicts" with the Forest Service's well-
11   established authority to impose restrictions on individuals'
12   access to national forest lands for mining and prospecting
13   purposes. Defs.' Mem. 8:2-4. It appears clear to the court
14   that Congress has granted the Forest Service statutory
15   authority to regulate mining claim access on NSF lands.
16   Pursuant to the Organic Administration Act of 1897, which
17   established the NFS, the Secretary of Agriculture ("the
18   Secretary") has the authority to make rules and regulations to
19   protect national forest lands from destruction and
20   depredation. 16 U.S.C. § 551. Persons entering the national
21   forests for mining and prospecting activities "must comply
22   with the rules and regulations covering such national
23   forests." 16 U.S.C. § 478. Additionally, the Ninth Circuit has
24   established that the authority of the Secretary includes the
25   right to restrict motorized access to specified areas of the
26   ////

                                  15

national forests, including mining claims. <u>Clouser v. Espy</u>,[3] 42

F.3d 1522, 1530 (9th Cir. 1994); <u>McMichael v. United States</u>,

355 F.2d 283 (9th Cir.1965) (upholding regulation prohibiting

use of motor vehicles in portion of national forest).

Mining operations are not exempt from the Secretary's

rule-making authority. <u>United States v. Weiss</u>, 642 F.2d 296,

298 (9th Cir. 1981). "The Forest Service may properly regulate

the surface use of forest lands. While the regulation of

mining per se is not within Forest Service jurisdiction, where

mining activity disturbs National Forest System lands, Forest

Service regulation is proper." <u>United States v. Goldfield Deep</u>

<u>Mines Co.</u>, 644 F.2d 1307, 1309 (9th Cir. 1981), cert. denied,

455 U.S. 907 (1982); <u>see</u> <u>United States v. Doremus</u>, 888 F.2d

630, 632 (9th Cir. 1989), cert. denied, 498 U.S. 1046 (1991);

<u>Weiss</u>, 642 F.2d at 298 (stating that the Secretary of

Agriculture has "power to adopt reasonable rules and

regulations regarding mining operations within the national

forests"). Further, in affirming the Forest Service's

authority to regulate mining, the court in <u>Doremus</u> rejected a

miner's contention that conduct "reasonably incident[al]" to

mining could not be so regulated, and left no doubt that the

---

[3] Plaintiffs attempt to distinguish <u>Clouser</u> on the grounds that the nature of the mining claims at issue differ from those at issue here. While true, the distinction is of no consequence. The Court of Appeals set forth in explicit terms the general principle concerning the authority of the Forest Service to regulate access to mines. Nowhere did the Circuit attempt to limit the applicability of these principles to the specific mining rights at issue. Thus, plaintiffs' attempt to distinguish <u>Clouser</u> fails.

1  Department of Agriculture possesses statutory authority to

2  regulate activities related to mining in order to preserve the

3  national forests. <u>Doremus</u>, 888 F.2d at 632.

4      The Forest Service is authorized to "impose numerous

5  requirements on anyone running a mining operation in the

6  National Forests." <u>United States v. Shumway</u>, 199 F.3d 1093,

7  1107 (9th Cir. 1999) (citing <u>Weiss</u>, 642 F.2d at 299).

8  Specifically, the Forest Service may "regulate mining

9  operations in national forests by requiring miners to submit .

10  . . operating plans . . . ." <u>Clouser v. Espy</u>, 42 F.3d 1522,

11  1530 (9th Cir. 1994); <u>United States v. Doremus</u>, 888 F.2d at

12  632 (upholding application of the notice of intent/plan of

13  operations process to miners). Such plans describe "the type

14  of operations proposed and the manner conducted" and are

15  intended to permit the Forest Service to minimize "disturbance

16  of surface resources." <u>Shumway</u>, 199 F.3d at 1107.

17      Here, the Forest Service's 2008 Plan requirement that

18  miners and prospectors submit a NI/PO in seeking to use

19  motorized vehicles on roads not designated for such use to

20  access mining or prospecting sites is well-within its

21  authority as recognized by the Ninth Circuit. See <u>e.g.</u>,

22  <u>Clouser</u>, 42 F.3d 1522, 1529-30 (citing collected cases and

23  stating that the Forest Service has the statutory authority to

24  regulate "means of access issues" regardless of mining claim

25  validity).

26  ////

1          **2.    Statutory Rights of Access for Mining and**

2               **Prospecting  Activities May be Regulated**

3          Plaintiffs contend that even if the Forest Service were

4    within its authority to impose such a requirement, such

5    authority cannot ultimately prevent miners holding Federal

6    mining claims from accessing their claims, see Pls.' Opp. at

7    10:16-18, because miners possess an "undisputed right to

8    access their claims without interference." Pls.' Opp. at 4:8-

9    9. Plaintiffs assert that this unfettered "miners' right of

10   access" is protected and authorized by several statutes,

11   specifically 30 U.S.C. § 21(a); 30 U.S.C. §§  22-54; 30 U.S.C.

12   §§ 612, 615; 16 U.S.C. § 1134(b); and 3 U.S.C. §§ 1701,

13   1732(b). FAC ¶ 48; Pls.' Opp. at 10:10-18.

14         Before proceeding to analyze the statutes, the court

15   notes two principles of statutory construction. First, "[a]s

16   with any case involving statutory interpretation, 'we state

17   once again the obvious when we note that, in determining the

18   scope of a statute, one is to look first at its language.'

19   [citations omitted] 'Absent a clearly expressed legislative

20   intention to the contrary, that language must ordinarily be

21   regarded as conclusive.' [citations omitted]" North Dakota v.

22   United States, 460 U.S. 300, 312 (1983)); see United States v.

23   Curtis, 988 F.2d 946, 948 (9th Cir. 1993) (citing In re

24   Perroton, 958 F.2d 889, 893 (9th Cir. 1992)). "When we find

25   the terms of a statute unambiguous, judicial inquiry is

26   complete, except in 'rare and exceptional circumstances.'

                                    18

1  [citations omitted]." <u>Garcia et al. v. United States</u>, 469 U.S.

2  70, 75 (1984). Where the court finds that the terms of a

3  particular statute are clear, the court will not consider any

4  additional arguments presented by the parties.

5      Second, if a statute is ambiguous or silent on an issue,

6  then it must be interpreted in light of its context. <u>Nat'l</u>

7  <u>Ass'n of Home Builders v. Defenders of Wildlife</u>, 551 U.S. 44,

8  665 (2007). This context includes both the overall statutory

9  scheme, id., as well as the statute's purpose, see, e.g.,

10 <u>Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.</u>, 515

11 U.S. 687, 699 (1995), <u>Cmtys. for a Better Env't v. City of</u>

12 <u>Richmond</u>, 184 Cal. App. 4th 70, 89, 108 Cal. Rptr. 3d 478

13 (2010) (citing <u>Cmtys. for a Better Env't v. S. Coast Air</u>

14 <u>Quality Mgmt. Dist.</u>, 48 Cal. 4th 310, 328, 106 Cal. Rptr. 3d

15 502, 226 P.3d 985 (2010)). With these principles in mind, the

16 court turns to the statutes cited by the plaintiffs.

17              **a.   Mining Laws of 1866 and 1872 (30 U.S.C. §§**

18                    **22-54)**

19     Plaintiffs argue that "30 U.S.C. §§ 22-54 protects the

20 right to mine on federal lands as well as incorporates into

21 Federal law the 'local customs and rules' allowing access to

22 mining claims through local roads and trails." FAC ¶ 49. In

23 support of their argument, plaintiffs quote 30 U.S.C. § 22,

24 which states:

25     *Except as otherwise provided*, all valuable mineral
       deposits in lands belonging to the United States, both
26     surveyed and unsurveyed, shall be free and open to

                                19

exploration and purchase, and the lands in which they are
found to occupation and purchase, by citizens of the
United States and those who have declared their intention
to become such, *under regulations prescribed by law*, and
according to the local customs or rules of miners in the
several mining districts, *so far as the same are
applicable and not inconsistent with the laws of the
United States*.

Id. (emphasis added).

The terms of the statute quite clearly state that the

"free and open" exploration, occupation, and purchase of the

lands in which valuable mineral deposits are found is subject

to "regulations prescribed by law," regulations that, as

previously discussed, the Ninth Circuit has determined the

Forest Service has authority to make and with which the "local

customs or rules of miners" must be consistent. Therefore, any

right of access to such land plaintiffs may have is subject to

Forest Service regulations.

### b.   Mining and Minerals Policy Act of 1970
### ("MMPA") (30 U.S.C. § 21(a))

Plaintiffs rely on the MMPA, specifically 30 U.S.C. §

21(a), in support of the proposition that miners possess an

unfettered right of access to their claims. FAC ¶ 48. However,

§ 21(a), in relevant part, states,:

The Congress declares that it is the continuing policy of
the Federal Government in the national interest to foster
and encourage private enterprise in . . . domestic
mining, minerals, metal and mineral reclamation
industries . . . so as to lessen any adverse impact of
mineral extraction and processing upon the physical
environment that may result from mining or mineral
activities.

20

1                             . . . .

2      It shall be the responsibility of the *Secretary of the*

3      *Interior* to carry out this policy when exercising his authority under such programs as may be authorized by law

4      other than this section."

5 Id. (emphasis added).

6     Defendants correctly point out that "nowhere in this

7 statement of policy is there any mention of ingress and egress

8 to mining claims, much less a statutory command that would

9 prohibit the Forest Service from exercising any regulatory

10 authority over mining claim access." Defs.' Mem. at 17:9-11.

11 Further, the statute, on its face, charges only the Secretary

12 of the Interior with the responsibility to carry out the

13 policy it describes, rendering the cited provision irrelevant

14 to plaintiffs' claims.

15                **c.   Multiple Surface Use Act ("MSUA") (30**

16                       **U.S.C. §§ 612 and 615)**

17     Plaintiffs maintain that two provisions of the MSUA, §§

18 612 and 615, prohibit the "restriction of any existing rights

19 of any mining claimant holding a valid mining claim" in the

20 ENF. FAC ¶ 50. Plaintiffs reliance on these provisions is

21 misplaced.

22     Section 612 provides in pertinent part that "[r]ights

23 under any mining claim hereafter located under the mining laws

24 of the United States shall be subject . . . to the right of

25 the United States to manage . . . surface resources thereof .

26 . . . Provided, however, That any use of the surface of any

21

1  such mining claim by the United States . . . shall be such as

2  not to endanger or materially interfere with prospecting,

3  mining or processing operations or uses reasonably incident

4  thereto . . . ." 30 U.S.C. § 612(b).

5      By its terms, 30 U.S.C. § 612 addresses only "use of the

6  surface of any . . . mining claim by the United States"

7  (emphasis added). Id.; see also Clouser v. Espy, 42 F.3d 1522,

8  1538 (9th Cir. 1994). In Clouser, the Ninth Circuit stated

9  that it saw "no basis for construing the statute as limiting

10 Forest Service regulation of activities on national forest

11 lands outside of the boundaries of the mining claim,

12 particularly in view of the fact that Congress subsequently

13 enacted a statute specifically addressing that issue-16 U.S.C.

14 § 1134(b)," see id., which the court addresses below. The

15 court, therefore, finds that this subsection applies only to

16 the surface of such claims and not to actions taken by the

17 government to regulate mining-related activities that occur on

18 national forest lands outside of the boundary of the mining

19 claim, including access to the claim.

20     Similarly the language of section 615 precludes its

21 applicability to plaintiffs' claims. Section 615 provides that

22 "[n]othing in [sections 611 to 615] and sections 601 and 603

23 of this title shall be construed in any manner to limit or

24 restrict or to authorize the limitation or restriction of any

25 existing rights of any claimant under any valid mining claim

26 heretofore located . . . [or] to . . . limit or repeal any

1  existing authority to . . . limit or restrict any use of the
2  lands covered by any patented or unpatented mining claim by
3  the United States . . . which is otherwise authorized by law."

4        The terms of this section clearly confine its
5  applicability to sections 601, 603, and 611-615, of the
6  Multiple Surface Use Act, none of which directly address
7  miners' rights of access to their mining claims. Additionally,
8  section 615 clearly affirms the United States' authority to
9  "limit or restrict use of the lands covered by any . . .
10 mining claim . . . which is otherwise authorized by law."
11 Therefore, these provisions in no way restrict the Forest
12 Services authority to regulate miners' use of NSF lands or
13 establish an unfettered right of access to those lands by
14 virtue of possessing a mining claim.

15                 **d.    The Wilderness Act of 1964 (16 U.S.C. §**
16                         **1134(b))**

17       Plaintiffs also cite 16 U.S.C. § 1134(b) in support of
18 their argument that miners possess an unlimited right of
19 vehicle access to their claims. FAC ¶ 51. Plaintiffs reliance
20 on section 1134(b), however, is similarly misplaced. Section
21 1134(b) provides that:

22           In any case where valid mining claims or other valid
             occupancies are wholly within a designated national
23           forest wilderness area, the Secretary of Agriculture
             shall, by *reasonable regulations* consistent with the
24           preservation of the area as wilderness, permit ingress
             and egress to such surrounded areas by means which have
25           been or are being customarily enjoyed with respect to
             other such areas similarly situated.
26

                                    23

1  Id. (emphasis added).

2      Plaintiffs have not alleged that the mining claims they
3  refer to in the FAC are within such a "wilderness area."
4  Therefore, they are precluded from challenging the 2008 Plan
5  based on this provision. Further, even if plaintiffs had made
6  such an allegation, the terms of the statute unambiguously
7  declare that the Secretary of Agriculture, and the Forest
8  Service by proxy, are authorized to permit access to mining
9  claims by reasonable regulations, affirming once again the
10  Forest Service's right to regulate access to mining claims and
11  establishing limitations on miners' right to access such
12  claims. See id.; see also Clouser v. Espy, 42 F.3d 1522, 1529
13  (9th Cir. 1994). Here, plaintiffs are not contesting the
14  reasonableness of the PI/NO requirement, rather they are
15  challenging the Forest Service's authority to establish such a
16  requirement. There is no support for such a proposition in
17  this statute.

18          e.   Federal Land Policy and Management Act
                 ("FLPMA") (43 U.S.C. §§ 1701 and 1732(b))
19

20      Finally, plaintiffs cite provisions of the FLPMA,
21  specifically sections 1701 and 1732(b), in support of their
22  assertion that miners' have an "undisputed right" to access
23  their claims "without interference." Neither of these
24  provisions, however, support plaintiffs' contention.

25      By relying on section 1701, a "Congressional declaration
26  of policy," plaintiffs are once again attempting to transform

24

1  a statement of policy into a command regarding the Forest

2  Service's authority to regulate mining claim access on NSF

3  lands. The court agrees with defendants that "the broad

4  statements of policy in Section 1701 contain no directive . .

5  . that would preclude the Forest Service from regulating

6  access across NFS lands for mining and prospecting activities

7  . . . ." Defs. Opp. at 18:2-4. Neither does section 1701

8  contain any language to support the allegation that miners'

9  possess an unfettered right of access to their mining claims.

10 Section 1732(b) is also irrelevant to plaintiffs contentions.

11 The statute specifically applies only to "the Secretary,"

12 which the court has previously recognized to refer to the

13 Secretary of the Interior, see Order at 51, and, thus, is

14 inapplicable to the Forest Service.

15          **3.   The Forest Service's Regulatory Scheme for**

16               **Mining and Prospecting Activities on NFS Lands**

17               **is Proper**

18          **a.   Forest Service Regulations May Limit**

19               **Miners' Access to NSF Lands**

20      In addition to the statutes discussed in the previous

21 section, plaintiffs maintain that the Forest Service's

22 regulations pertaining to operations conducted under the

23 Mining Laws of 1872 as they affect surface resources on

24 National Forest System lands, specifically 36 C.F.R. § 228.12

25 ////

26 ////

                                    25

1  and § 228.4(a)(1)(i),[4] protect miners' unrestricted right of

2  access to their mining claims. FAC ¶¶ 48, 52. In support of

3  that assertion, plaintiffs cite a portion of section 228.12,

4  which provides in relevant part:

5      An operator is entitled to access in connection with
       operations, but no road, trail, bridge, landing area for
6      aircraft, or the like, shall be constructed or improved,
       *nor shall any other means of access, including but not*
7      *limited to off-road vehicles, be used until the operator*
       *has received approval of an operating plan in writing*
8      *from the authorized officer when required by § 228.4(a).*

9  Id. (emphasis added).

10     The language of the regulation demonstrates, however,

11 that miners' right of access can be and is limited under the

12 Forest Services regulatory scheme. The provision expressly

13 states that the use of "other means of access" is subject to

14 the requirements of section 228.4(a). Section 228.4(a) states

15 that "[e]xcept as provided in paragraph (a)(1) of this

16 section, a notice of intent to operate is required from any

17 person proposing to conduct operations which might cause

18  ─────────────────────────

19      [4] The court notes that plaintiffs also cite 36 C.F.R. § 212.6
    and 36 C.F.R. § 15(c) to argue that the Forest Service had no
20  authority to require a NI/PO where plaintiffs are seeking access
    to their mining claims, see FAC ¶ 57, but to no avail. Section
21  212.6 provides that the Forest Service shall permit "use of
    existing [NSF] roads and trails" subject to the "rules and
    regulations governing the lands or trails to be used," clearly
22  making access to NSF roads subject to the Forest Service's
    regulatory authority. Section 15(c) applies only to valid claims
23  within "Natural Forest Wilderness" and is inapplicable to
    plaintiffs claims as pled. Further, section 15( c) provides only
24  that "persons with valid mining claims . . . shall be permitted
    access to such surrounded claims." The 2008 Plan does not prevent
25  access to mining claims, but restricts access to non-motorized
    means if a particular road or trail is not designated for motorized
26  use, subject to the NI/PO procedure.

                                  26

1  significant disturbance of surface resources. . . ." Thus,
2  plaintiffs central contention — that miners and prospectors
3  may operate motor vehicles on NSF roads and trails that are
4  not designated for such use without complying with the NI/PO
5  procedure — comes to rest solely on the exemption to the NI
6  requirement under section 228.4(a)(1)(i), which extends to the
7  PO pursuant to section 228.4(a)(3). The court will discuss the
8  scope of this exemption in the next section.

9         **b.   Forest Service Regulations May Require the**
10              **Submission of a Notice of Intent or Plan of**
11              **Operations Requirement for Mining and**
12              **Prospecting Activities**

13       Plaintiffs allege that "the Forest Service has no
14  authority to require a Notice of Intent or Plan of Operations
15  where [p]laintiffs are only seeking access and egress to and
16  from their valid Federal mining claims and mineral estates. A
17  Notice of Intent to Operate is not required under 36 C.F.R. §
18  228.4(a)(1) where: (i) Operations which will be limited to the
19  use of vehicles on existing public roads or roads used and
20  maintained for National Forest System Purposes. . . ." FAC ¶
21  57. Plaintiffs continue to state that the existing roads and
22  rights of way closed pursuant to the 2008 Plan, including
23  roads used by prospectors and miners that are not recognized
24  or numbered by the Forest Service, are still existing public
25  roads as well as roads that are used and maintained for Forest
26  Service purposes. Id. Plaintiffs provide no support, legal or

27

otherwise, for this statement, but instead simply state that the Forest Service's regulations provide no special definition for the otherwise unambiguous terms. Pls.' Opp. at 6:2-7.

Although defendants concede that the Forest Service's mining regulations provide no definition for the term "public roads," defendants point out that the Forest Service Manual defines the term "public road" as "a road that is: (1) Available, except during scheduled periods, extreme weather, or emergency conditions; (2) Passable by four-wheel standard passenger cars; and Open to the general public for use without restrictive gates, prohibitive signs or regulation other than restrictions based on size, weight, or class of registration. (23 U.S.C. 101(a)(27); 23 CFR 460.2(c) and 660.103)." Forest Service Manual 7730.5, excerpt attached as Exhibit 4, Doc. No. 51-5 to Dfs.' Reply Mem. Here, the roads closed pursuant to the 2008 Plan are no longer open to the general public and, therefore, do not fall under the Forest Service's definition of "public roads."

"[I]f an agency's interpretation of a statute or regulation is not clearly outside its authority, then the courts should defer to the agency's expertise." Good Samaritan Hosp., Corvallis v. Mathews, 609 F.2d 949, 954 (9th Cir. 1979) (citing Udall v. Tallman, 380 U.S. 1, 16 (1965)); see Siskiyou Regional Educ. Project v. U.S. Forest Serv., 565 F.3d 545, 554-55 (9th Cir. 2009). There appears to the court to be no reason not to accept the Forest Service's interpretation of

1   "public roads" as presented in the Forest Service Manual,

2   especially because the Forest Service's definition coincides

3   with the traditional definition of the word "public," that is,

4   "open or available for all to use." Black's Law Dictionary

5   (9th ed. 2009), public. Further, plaintiffs do not address the

6   Forest Service Manual's definition or provide any authority to

7   indicate that such an interpretation is "outside [the Forest

8   Service's] authority."

9       As for determining which roads constitute "roads used and

10  maintained for National Forest Service purposes," defendants

11  state that roads not designated for motor vehicle use under

12  the 2008 Plan consist of those roads that the agency had

13  determined do not meet the criteria for designation, including

14  a "need for maintenance and administration" and the

15  "availability of resources for that maintenance and

16  administration," and, thus, do not qualify as "roads used and

17  maintained for National Forest Service purposes." Dfs.' Reply

18  Mem. at 5:8-17. As with the "public roads" interpretation, the

19  court can see no apparent reason why it should not accept the

20  Forest Service's interpretation of its regulation. Therefore,

21  plaintiffs' reliance on the exemption contained in section

22  228.4(a)(1)(i) to avoid compliance with the NI/PO procedure

23  will not aid them here.

24      It is unnecessary for the court to address defendants'

25  argument that plaintiffs are subject to the separate

26  requirements of the Forest Service's Travel Management

1   Regulations, 36 C.F.R. §§ 212 et. seq., and the general

2   prohibition against public motor vehicle use, 36 C.F.R. §

3   261.13, because the court has already determined that

4   plaintiffs are required to comply with the NI/PO requirement

5   in seeking to use motor vehicles to access claims via NSF

6   roads and trails not designated for such use under the 2008

7   Plan.

8         **4.    The __Berry__ Order Does Not Grant Miners Unimpeded**

9               **Access to NSF Lands**

10        Finally, in conjunction with the various statutes and

11   regulatory exemptions plaintiffs cite in support of their

12   proposition that miners and prospectors are not required to

13   comply with the NI/PO procedures, plaintiffs quote this

14   court's order describing the relief to be provided in Center

15   for Sierra Nevada Conservation, et. al., v. Berry, No. CIV-S-

16   02-0325, Doc. No. 153, as stating that "the Forest Service

17   will restrict private party use of wheeled motor vehicles

18   (excluding administrative use by the Forest Service or its

19   agents, other permitted uses, or uses under valid pre-existing

20   rights) to National Forest System for public use . . . ." FAC

21   ¶ 53. Plaintiffs then proceed to state that the closure of

22   roads and rights of way, subject to the requirement that

23   miners submit a NI/PO in seeking entry, pursuant to the 2008

24   Plan violate the Berry order because plaintiffs possess a pre-

25   existing right to unimpeded access to "valid Federal mining

26   claims and mineral estates." See id. The terms of this order,

however, were only in place "until new management direction is adopted." Berry, Doc. No. 153 (June 14, 2005) at 2. New management direction has been adopted through the decision at issue in the instant case. Thus, the section of the Berry order upon which plaintiffs' rely offers no support for their claims.

### IV. CONCLUSION

For the aforementioned reasons, plaintiffs' complaint is dismissed with prejudice and defendants' motion to dismiss, Doc. No. 51, is GRANTED. The Clerk of Court is instructed to enter JUDGMENT FOR DEFENDANTS.

IT IS SO ORDERED.

DATED:  December 14, 2010.


LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

31